ACCEPTED
13-13-00549-CV
THIRTEENTH COURT OF APPEAL
CORPUS CHRISTI, TEXAS
1/6/2015 11:12:49 AM
DORIAN RAMIREZ
CLERK

CAUSE NO. 13-13-00549-CV

IN THE COURT OF APPEALS
FOR THE THIRTEENTH JUDICIAL DISTRICT
AT CORPUS CHRISTI-EDINBURG, TEXAS

**F I L E D**
IN THE 13TH COURT OF APPEALS
CORPUS CHRISTI

1/6/15

*Dorian E. Ramirez*

CLERK

_____

PREMIUM ASSETS, INC.
Appellant
v.

LYDIA A. GARCIA D/B/A JOE LYNN DAZZLES AND
MORE and LYDIA A. GARCIA
Appellees

_____

Appeal from the 214th Judicial District Court
Of Nueces County, Texas
CAUSE NO. 2012DCV-2610-F
The Honorable Jose Longoria

_____

APPELLEES' REPLY BRIEF TO AMENDED BRIEF OF APPELLANT

_____

Jeffrey Lehrman
State Bar No. 24075490
Robert Anderson
State Bar No. 01220800
Douglas D. McLallen
State Bar No. 00788025
Anderson, Lehrman, Barre, & Maraist LLP
Gaslight Square
1001 Third St, Suite 1
Corpus Christi, TX 78404
Telephone: 361-884-4981
Facsimile: 361-884-2822
jlehrman@albmlaw.com
randerson@albmlaw.com
dmclallen@albmlaw.com

ATTORNEYS FOR APPELLEE

## IDENTITY OF PARTIES AND COUNSEL

**Appellate Counsel for Appellant Premium Assets, Inc.**
Roy K. Ewart
State Bar No. 06752705
Law Offices of Mae Nacol & Associates, P.C.
8303 Southwest Freeway, Suite 945
Houston, Texas 77074
Telephone: 713-655-7055
Facsimile: 713-655-7702
wmnacol@sbcglobal.net

**Trial Counsel for Appellant Premium Assets, Inc.**
William Maxwell
State Bar No. 24028775
William Maxwell, PLLC
15821 FM 529, Box 298
Houston, Texas 77095
Telephone: 713-739-0663
Facsimile: 713-621-1449
attorneywtm@hotmail.com

**Appellate and Trial Counsel for Appellee Lydia A. Garcia d/b/a Joe Lynn Dazzles and More and Lydia A. Garcia**
Jeffrey J. Lehrman
State Bar No. 24074590
Robert Anderson
State Bar No. 01220800
Douglas D. McLallen
State Bar No. 00788025
Anderson, Lehrman, Barre, and Maraist LLC
Gaslight Square
1001 Third St, Suite 1
Corpus Christi, TX 78404
Telephone: 361-884-4981
Facsimile: 361-884-2822
jlehrman@albmlaw.com
randerson@albmlaw.com
dmclallen@albmlaw.com

## TABLE OF CONTENTS

IDENTITY OF THE PARTIES AND COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATE REGARDING ORAL ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    Issues Presented:   The Trial Court did not err in rendering final
                          judgment in favor of Appellees. . . . . . . . . . . . . . . . . . 14

    Sub-Issues:   I.   The Lease Agreement between the landlord and the
                    Appellee does not prevent the affirmation of the Trial
                    Court's Final Judgment on the Appellee's claims for
                    damages against the Appellant under the Texas Deceptive
                    Trade Practices Act and promissory estoppel causes of
                    action. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

             II.   Any contractual relationship between the Appellee and the
                    landlord does not prevent the affirmation of the Trial
                    Court's Final Judgment on the Appellee's claims for
                    damages against the Appellant under the Texas Deceptive
                    Trade Practices Act and promissory estoppel causes of
                    action. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

III.  The Statute of Frauds nor the Statute of Conveyances prevent the affirmation of the Trial Court's Final Judgment on the Appellee's claims for damages under the Texas Deceptive Trade Practices Act and promissory estoppel causes of action.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

APPENDIX. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

# TABLE OF AUTHORITIES

## Cases

*2616 S. Loop L.L.C. v. Health Source Home Care, Inc.,* 201 S.W.3d 349, 355 (Tex.App.-Houston [14th Dist.] 2006, no pet.).. . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Adams v. Can-Dee Oil Corp.,* 357 S.W.2d 808 (Tex.Civ.App. Waco 1962 writ ref'd n.r.e.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Ahmed v. Ahmed,* 261 S.W.3d 190, 194 (Tex.App.-Houston [14th Dist.] 2007, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Alexander v. Turtur & Associates,* 146 S.W.3d 113, 117 (Tex.2004). . . . . . . . . . 38

*Bowe v. GMC/Pontiac Div.*, 830 S.W.2d 775 (Tex.App.—Houston [1st Dist.] 1992, writ denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Broaddus v. Grout,* 152 Tex. 398, 258 S.W.2d 308, 309 (1953). . . . . . . . . . . . . . 41

*Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Cessna Aircraft Co. v. Aircraft Network, LLC*, 213 S.W.3d 455 (Tex.App.-Dallas 2006, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Chilton Ins. Co. v. Pate & Pate Enters., Inc.*, 930 S.W.2d 877 (Tex.App.—San Antonio 1996, writ denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005). . . . . . . . . . . . . . . . . 12

*Cohn v. Comm'n for Lawyer Discipline,* 979 S.W.2d 694, 696-97 (Tex.App.-Houston [14th Dist.] 1998, no pet.).. . . . . . . . . . . . . . . . . . . . . . . . 13

*Collins v. Walker,* 341 S.W.3d 570, 573-74 (Tex.App. - Houston [14th Dist.] 2011, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 40

*DeLaney v. Assured Self Storage,* 272 S.W.3d 837, 839 (Tex.App.-Dallas 2008, no

pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*El Paso Natural Gas Co. v. Minco Oil & Gas Co.*, 964 S.W.2d 54 (Tex. App.—Amarillo 1997, pet. granted). . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*English v. Fischer*, 660 S.W.2d 521, 524 (Tex.1983). . . . . . . . . . . . . 18, 19, 33, 34

*FDIC v. F & A Equip. Leasing,* 854 S.W.2d 681, 684 (Tex.App.-Dallas 1993, no writ). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Ford v. City State Bank*, 44 S.W.3d 121, 139 (Tex.App. - Corpus Christi 2001, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Fretz Construction Co. v. Southern Nat'l Bank,* 626 S.W.2d 478, 483-84 (Tex.1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 33

*Gevinson v. Manhattan Constr. Co.,* 449 S.W.2d 458 (Tex.1969). . . . . . . . . . . 23

*Henderson v. Texas Commerce Bank-Midland, N.A.,* 837 S.W.2d 778, 781-82 (Tex. Ct.App.-El Paso 1992, writ denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Herrin v. Medical Protective Co.,* 89 S.W.3d 301, 310 (Tex. App. – Texarkana 2002, pet denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 38

*Hoye v. Like*, 958 S.W.2d 234 (Tex.App.-Amarillo 1997, no pet.). . . . . . . . . . . 28

*Ikon Office Solutions Inc. v. Elfert,* 125 S.W.3d 113, 125 n.6 (Tex. App. - Houston [14th Dist.] 2003, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Italian Cowboy Partners Ltd., v. Prudential Insurance Co. of America,* 341 S.W.3d 323, at 333 (Tex. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*J & J Sys., Inc. v. Towers of Texas, Inc.*, 833 S.W.2d 532 (Tex. App.—Eastland 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41, 42

*J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 229 (Tex.2003). . . . . . . . . . . . 15

*Kennedy v. Sale* 689 S.W.2d 890 (Tex.1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Lawson v. Commercial Credit Business Loans, Inc.,* 690 S.W.2d 679 (Tex.App. – Eastland, 1985, writ ref'd n.r.e).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30

*McClure v. Duggan,* 674 F.Supp. 211 (N.D.Tex.1987). . . . . . . . . . . . . . . . . . . . . 30

*McDonald v. Roemer,* 505 S.W.2d 698, 699 (Tex.Civ.App.-San Antonio 1974, no writ). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39, 40

*McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex.1986). . . . . . . . . . . . . . . . . 13

*Martin v. Lou Poliquin Enterprises, Inc.,* 696 S.W.2d 180 (Tex. App. – Houston [14th Dist.] 1985, writ ref'd n.r.e.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 30

*"Moore" Burger, Inc. v. Phillips Petroleum Co.,*
492 S.W.2d 934 (Tex.1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 33, 40

*Nagle v. Nagle,* 633 S.W.2d 796 (Tex.1982). . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Nordstrom v. Nordstom,* 965 S.W.2d 575 (Tex.App.-Houston [1st Dist.] 1997, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442 (Tex.1989). . . . . . . . . . . . . . 21

*Pony Express Courier Corp. v. Morris*, 921 S.W.2d 817, 820 (Tex. App.--San Antonio 1996, no writ). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Regency Advantage Ltd. Partnership v. Bingo Idea–Watauga, Inc.,* 936 S.W.2d 275, 278 (Tex.1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Remington Arms Co. v. Luna*, 966 S.W.2d 641 (Tex. App.--San Antonio 1998, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Richter v. Wagner Oil Co.*, 90 S.W.3d 890, 899 (Tex.App.-San Antonio 2002, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Roberts v. Burkett,* 802 S.W.2d 42 (Tex. App. Corpus Christi 1990, no writ). . . 31

*Schlumberger Technology Corp. v. Swanson*, 959 S.W.2d 171(Tex.1997).. . . . . 15

*Sears, Roebuck and Co. v. Wilson,* 963 S.W.2d 166 (Tex. App. – Fort Worth 1998, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Shaheen v. Motion Indus.,* 880 S.W.2d 88, 91 (Tex.App. - Corpus Christi 1994, writ denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 40

*Solar Applications Engineering, Inc. v. T.A. Operating Corp.,* 327 S.W.3d 104, 108 (Tex.2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763 (5th Cir. 1988). . . . . . 19, 35

*Stable Energy, L.P. v. Kachina Oil & Gas, Inc.*, 52 S.W.3d 327, 336 (Tex.App.-Austin 2001, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Stanley v. CitiFinancial Mortg. Co.,* 121 S.W.3d 811 (Tex.App. - Beaumont 2003, pet denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*State v. $281,420.00 in United States Currency*, 312 S.W.3d 547 (Tex.2010). . . 28

*Texas Taco Cabana, L.P. v. Taco Cabana of N.M.,* 304 F.Supp.2d 903 (W.D.Tex. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Vickery v. Comm'n for Lawyer Discipline,* 5 S.W.3d 241, 252 (Tex.App.-Houston [14th Dist.] 1999, pet. denied).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Walker v. Tafralian,* 107 S.W.3d 665 (Tex.App.- Fort Worth 2003, pet. denied). 32

*Weitzel v. Barnes,* 691 S.W.2d 598, 600 (Tex.1985). . . . . . . . . . . . . . . . . . . . . . 29

*West Beach Marina, Ltd. v. Erdeljac*, 94 S.W.3d 248 (Tex.App.—Austin 2002, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Wheeler v. White*, 398 S.W.2d 93 (Tex.1965). . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## Statutes

TEX. BUS. & COM. CODE §17.45. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

TEX. BUS. & COM. CODE ANN. § 17.505. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

TEX. BUS. & COM. CODE ANN. § 26.01. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 31

TEX. PROP. CODE §5.021. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 37, 40

TEX. R. CIV. P. 299. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## Article

Richard M. Alderman, *The Texas Deceptive Trade Practices Act In Context: Not All That Bad; Presented by: The Center for Consumer Law*, Houston, Texas, October 23, 2009, Page 23. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

# I. STATEMENT OF THE CASE

On June 7, 2012, Appellee, Lydia A. Garcia d/b/a Joe Lynn Dazzles and More and Lydia A. Garcia brought suit against Appellant, Premium Assets, Inc., under the Texas Deceptive Trade Practices Act, promissory estoppel, and various breach of contract theories for the Appellant's deceptive conduct and acts that were the producing cause of damages incurred by the Appellee. (CR 3-11). Appellant subsequently filed its First Amended Answer, Special Exceptions and Counterclaim on September 27, 2012. (CR 32-35). The Appellee filed it's Original Answer to Appellant's Counterclaim on December 21, 2012. (CR 113-118).

Appellee filed its First Amended Original Petition on February 21, 2013 (CR 229-236). On April 23, 2014, the case proceed to a trial to the bench without objection from either party. On August 6, 2013, the trial court issued a Final Judgment against the Appellant. (CR 733-734). The Appellant subsequently requested Findings of Fact and Conclusions of Law from the Court which were entered on August 30, 2014. (CR 752-760). Thereafter, the Appellant filed its Notice of Appeal and posted a supersedes bond with the District Clerk's office. (CR 761-762, 839-844).

# II. STATEMENT REGARDING ORAL ARGUMENT

Appellee believes that oral argument is necessary because the Court would

benefit from oral argument regarding the issues raised in the Appellant's Amended Brief as well as the arguments raised in Appellee's Reply Brief to Appellant's Amended Brief.

## III.  STATEMENT OF THE FACTS

Appellee Lydia A. Garcia d/b/a Joe Lynn Dazzles and More and Lydia A. Garcia (hereinafter referred to as "Appellee"), originally brought this cause of action against Appellant, Premium Assets, Inc. (hereinafter referred to as "Appellant") on June 7, 2012. (CR 3-11). On or about the first week in January, 2012, the Appellee contacted Jason Alaniz (hereinafter referred to as "Alaniz"), a real estate brokerage agent employed by Joe Adame and Associates and the listing agent for the Appellant, to inquire about obtaining a commercial lease for a business venture. (PX 15; R.R. Vol. 5; p. 16, lines 15-21 and p. 34, lines 22-25 through p. 36, line 16).

At the directive of Alaniz, Appellant's agent, with the authority to represent and negotiate commercial lease agreements on behalf of the Appellant, the Appellee was referred to a commercial lot located at 711. N. Carancahua, Corpus Christi, Texas. (PX 15; R.R. Vol. 5; p. 16, lines 15-25; p. 35 lines 5-10;  p. 38, lines 5-25; p. 39, lines 1-15;  p. 40, lines 2-6; p. 178, lines 20-23; p. 194 lines 24-25; p. 195, lines 1-25, p. 196 lines 2-4).

The specific commercial lot was located in Suite 115-A of a commercial office

building known as American Bank Plaza in Corpus Christi, Texas. ( PX 3; R.R. Vol. 5; p. 16, lines 15-25). The property was managed by the Appellant with Alaniz being the leasing agent for the Appellant. ( PX 15; R.R. Vol. 5; p. 16, lines 15-25).

After inspecting the commercial lot, the Appellee instantly realized that it would be perfect for her intended business endeavor. (R.R. Vol. 5; p. 17, lines 10-20, p. 82, lines 11-17). Specifically, the Appellee's store, which was to be called Joe Lynn Dazzles & More, was intended to sell clothing and accessory items to downtown, professional women. (R.R. Vol. 5; p. 17, lines 21-23). Upon inspection of the property, the Appellee was informed that it would be available to lease at a cost of $275.00 per month under the conditions of a 12 month lease. (PX 3). There was also a required security deposit in the amount of one month's rent ($275.00) to be paid at the time of move in. (PX 3).

On or about January 13, 2012, the Appellee obtained a new Tax ID # in preparation for the opening of her new business. (R.R. Vol. 5; p. 16, lines 15-21; p. 20, lines 24-25, p. 21, lines 1-8). That same week the Appellee was informed by Alaniz that the Appellant had agreed to accept her as a tenant beginning in February, 2012, and that a formal Lease Agreement would be ready for execution within the next week. (R.R. Vol. 5; p. 19, lines 8-13; p. 20, lines 16-19 and lines 21-23; p. 53, lines 3-5; p. 113, lines 2-5 and 15-17, p. 126, lines 18-22).

On or about January 26, 2012, the Appellee, in reliance on the representations of Alaniz, arrived at the offices of Joe Adame & Associates to formally execute the Lease Agreement for the commercial lot. (R.R. Vol. 5; p. 49, lines 20-25). After reviewing the Lease Agreement, the Appellee formally executed it and gave it back to Alaniz who forwarded it to Appellant. (R.R. Vol. 5; p. 49, lines 20-25, p. 82 lines 23-25, p. 83 lines 1-4). Additionally, the Appellee also tendered Alaniz a check for February's rent and security deposit in the amount of one month's rent pursuant to the terms of the Lease Agreement (PX-3). The payments were accepted by Alaniz as agent for the Appellant and timely delivered to the Appellant. (R.R. Vol. 5; p. 66, lines 4-25; p. 67, lines 1-2; p. 152, lines 16-25).

In reliance upon the executed Lease Agreement and representations of Alaniz, the Appellee began to take the necessary actions for her expected February 2012 grand opening. (R.R. Vol. 5; p. 20, lines 24-25; p. 21, lines 1-8; p. 112, lines 23-25; p. 113, lines 1-5). Some of the actions taken by the Appellee in reliance on the representations of Alaniz included the following:

1.      Obtained Commercial Policy #605072070 through Farmers Insurance Group (PX 7;  R.R. Vol. 5; p. 99, lines 8-25;  p. 100, lines 1-2);

2.      Purchased $2,843.48 worth of supplies, materials and merchandise to be used in her new place of business. (PX 1, 2, 4, 5, 6, 8,9,10; R.R. Vol. 5; p. 18, lines

12-14 and lines 17-18, p. 97, lines 1-9, 17-24; p. 98, lines 5-20,  p. 100, lines 8-22, p. 101, lines 24-25, p. 102, lines 1-25, p. 104, lines 23-25, p. 105, lines 1-25, p. 106, lines 6-25, p. 107, lines 1-25, p. 117, lines 12-25, p. 153, lines 16-25; p. 156 lines 21-24);

3. Purchased checks for her new business account.  (PX 4; R.R. Vol. 5; p. 96, lines 19-25;  p. 97, lines 1-9);

4. Opened up new business checking account with Bank of America.  (R.R. Vol. 5; p. 17, lines 21-23); *and*

5. Quit her job as Office Manager with Sealevel Management. (R.R. Vol. 5; p. 113, lines 15-17; p. 114, lines 3-6; page 115, lines 25; p. 116, lines 1-3, and, lines 7-18).

The next afternoon, January 27, 2012, the Appellee visited the property where she dropped off a copy of her newly obtained commercial liability policy with employees of Appellant.  While there, she picked up an entry card key and unit key to Suite 115A from Noel Harris, Appellant's property manager, and took full possession of the unit. (R.R. Vol. 5; p. 92 lines 19-21; p. 118, lines 19-25, p. 119, lines 1-23; p. 146, lines 18-21).  The access keys were given to Appellee without any limitation or restriction in use or time by Appellant. (R.R. Vol. 5; p. 86, lines 6-10 and lines 17-19). The Appellee was also able to arrange, with Appellant's express

consent, to have several fixtures delivered to her suite around 7:00 p.m. that same day. (R.R. Vol. 5; p. 83, lines 14-24).

All of said actions taken by the Appellant ratified the prior representations made by Alaniz regarding the acceptance of the Appellee as a tenant by the Appellant, which was reasonably relied upon by Appellee. Appellee subsequently began to move into the commercial suit in anticipation of her grand opening.

On or about February 1, 2012, the Appellee arrived at the property early in the morning to continue to set up her store. (R.R. Vol. 5; p. 123, lines 5-25, p. 124 lines 1-11). Around noon, the Appellee left to get more supplies and merchandise at a nearby retail location. (R.R. Vol. 5; p. 123, lines 5-25, p. 124 lines 1-11). Upon arriving back at the property, the Appellee discovered that, while she was gone, the locks to the door to her suite had been changed by the Appellant thus preventing her from accessing her leased property. (R.R. Vol. 5; p. 53, lines 6-9, p. 86 lines 20-24; p. 123, lines 5-11).

The Appellant had given no prior notice to the Appellee that it was locking her out of her unit. (R.R. Vol. 5; p. 57, lines 23-25; p. 58, line 1 and lines 16-23). Moreover, testimony at trial revealed that at the time the Appellee was locked out of her commercial space by the Appellant, the Appellee was not in violation of any provision in her lease agreement. (R.R. Vol. 5; p. 84, line 25; p. 85, lines 1-5).

Furthermore, at the time the Appellant locked the Appellee out of her commercial suite, the Appellant had personal knowledge that the Appellee had personal property in the unit and had already moved into the unit. (R.R. Vol. 5; p. 53, line 25; p. 54, lines 1-10; p. 85, lines 22-24; p. 86 line 25; p. 87 lines 1-3).Testimony at trial further established that the Appellant expressly refused to provide the Appellee with any prior notice of the lockout despite actual knowledge that she had moved into the unit and had personal property inside of the unit. (R.R. Vol. 5; p. 87, lines 11-24).

Completely shocked that the Appellant had now decided to breach their agreement and had made the rash decision to change the locks while she had briefly stepped out, the Appellee began to ask around the building for an explanation. It was at this point that the Appellee became aware that another tenant in the building had expressed concern to the Appellant that because her business sold similar merchandise to Appellee's, she would be commercially disadvantaged by the Appellee's continued occupancy. (R.R. Vol. 5; p. 48, lines 10-25, p. 49, lines 1-15; p. 113, lines 15-17,).

Subsequently, the Appellee received correspondence from the Appellant which alleged that the Appellee's lease had been rejected due to a failed credit check.(D.X.2, D.X. 3). However, after executing the Lease Agreement, the Appellee was expressly

told by Alaniz that there would be no need for a credit check to be run on the Appellee as that was only the policy of the Appellant when they were renting out "large commercial spaces". (R.R. Vol. 5; p. 112, lines 14-18 and lines 19-22; p. 126, lines 23-25, p. 127, lines 1-4; p. 188, line 25; p. 189 lines 1-3).

Additionally, there was no language in the Lease Agreement which required a tenant to complete a credit check or be approved by way of credit check prior to becoming a tenant or the Lease Agreement becoming binding. (PX-3) (R.R. Vol. 5; p. 50, lines 24-25, p. 51, lines 1-6; p. 88, lines 4-9 ). This fact was corroborated at trial with testimony from Noel Harris who testified there was never any credit report run on several of the existing and prior tenants at the Subject Property. (R.R. Vol. 5; p. 88, lines 4-9; p. 89, lines 5-15). Additionally, at the time Appellee was locked out by Appellant a credit check had not been performed nor had her Lease Agreement been denied. (R.R. Vol. 5; p. 51, lines 1-6; p. 60, lines 7-13,).

The credit report the Appellant allegedly relied upon was for a different "Lydia Garcia" and thus contained wholly inaccurate and unreliable reporting data. (DX 2; R.R. Vol. 5; p. 109, lines 11-16). Indeed, when questioned about the validity of the credit report upon which it was relying upon, the Appellant refused to provide the Appellee with a copy of said credit report. (R.R. Vol. 5; p. 109, lines 1-10).

In truth, and by the Appellant's own admission at trial, Appellee was in

compliance with all of the terms and conditions of the Lease Agreement during the incident in question. (R.R. Vol. 5; p. 53, lines 3-5). As a result, Appellee objected to the Appellant's attempts to circumvent the terms of their own lease agreement by misrepresenting the real reason they were breaching her lease agreement. Indeed, when faced with the prospect of her lease being denied due to a credit check the Appellee issued a good faith offer to pay the full amount of the lease ($3,300.00) up front. (R.R. Vol. 5; p. 111, lines 21-25, p. 112, lines 1-13). Appellant, without reason or justification, unilaterally rejected Appellee's good faith offer. (R.R. Vol. 5; p. 112, lines 1-13).

Additionally, Appellant refused to provide Appellee with a date and time to pick up her personal property which was still locked away in the commercial suite through trial. (R.R. Vol. 5; p. 55, lines 2-7 and lines 24-25, p. 56, lines 1-2; p. 94 lines 22-25; p. 95 lines 1-10).

On or about April 5, 2012, Appellee made a formal demand to Appellant for damages incurred, in part, as a result of Appellant's deceptive trade practices. (PX 16). The correspondence constituted Appellee's notice of claims to Appellant and was sent pursuant to TEX. BUS. & COM. CODE ANN. § 17.505, more commonly referred to as the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"). (PX 16). As of June 5, 2012 (60 days), Appellee had yet to receive any formal correspondence

or formal offer of settlement from Appellant, therefore suit was filed on June 7, 2012. (CR 3-11).

Appellee's suit against Appellant alleging violations of the Texas Deceptive Trade Practices Act, promissory estoppel, and various breach of contract theories for damages incurred as a proximate result of Appellant's conduct. (CR 3-11). Appellant filed its First Amended Answer, Special Exceptions and Counterclaim on September 27, 2012. (CR 32-35). On December 21, 2012, Appellee filed its Original Answer to Appellant's Counterclaim. (CR 113-118).

Appellee filed its First Amended Original Petition on February 21, 2013 (CR 229-236). On April 23, 2014 the case proceed to a bench trial without objection from either party. On August 6, 2013, the Trial Court issued a Final Judgment against Appellant. (CR 733-734). Appellant subsequently requested a Findings of Fact and Conclusions of Law from the Court which was entered on August 30, 2014. (CR 752-760). Appellant filed its Notice of Appeal and posted a supersedes bond with the Nueces County District Clerk's office. (CR 761-762, 839-844). This appeal ensued.

## IV. SUMMARY OF THE ARGUMENT

Under both the Texas Deceptive Trade Practices Act (DTPA) and the common law theory of promissory estoppel, there is no requirement that a party have an enforceable contract under Section 26.01 of the Texas Business and Commerce Code

as an element necessary to sustain recovery. The lease agreement at issue was not within the Statute of Frauds. Additionally, promissory estoppel is an exception to the Statute of Frauds.

Under both the DTPA and the common law theory of promissory estoppel, there is no requirement that a party have an enforceable contract under Section 5.021 of the Texas Property Code as an element necessary to sustain recovery. The lease agreement at issue was for less than one year precluding application of the Statute of Conveyances; and an exception an exception to the Statute of Conveyances applies.

There is also nothing contained within the Lease Agreement that would preclude a finding of reliance under either the DTPA or the common law theory of promissory estoppel.

## VI. ARGUMENT

## A. Standard of Review

When the trial court's findings involve questions of law and fact, the appellate court reviews the trial court's decision for an abuse of discretion. *El Paso Natural Gas Co. v. Minco Oil & Gas Co.*, 964 S.W.2d 54 (Tex. App.—Amarillo 1997, pet. granted), rev'd sub nom. *El Paso Natural Gas Co. v. Minco Oil & Gas, Inc.*, 8 S.W.3d 309 (Tex. 1999) (applying abuse of discretion standard to a finding of unconscionability); *Pony Express Courier Corp. v. Morris*, 921 S.W.2d 817, 820

(Tex. App.--San Antonio 1996, no writ) (applying abuse of discretion standard to a finding of unconscionability); *see also Remington Arms Co. v. Luna*, 966 S.W.2d 641, 643 (Tex. App.--San Antonio 1998, pet. denied) (applying abuse of discretion standard to class certification findings).

In a legal sufficiency review, the reviewing court determines whether the evidence would enable reasonable and fair-minded people to reach the finding under review. *See City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005).

In conducting this review, the court credits favorable evidence if reasonable fact finders could and disregard contrary evidence unless reasonable fact finders could not. *See id.*; *see also Ahmed v. Ahmed,* 261 S.W.3d 190, 194 (Tex.App.-Houston [14th Dist.] 2007, no pet.). A legal sufficiency, or no evidence, challenge may only be sustained when either the record reveals a complete absence of evidence of a vital fact, the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, the evidence offered to prove a vital fact is no more than a mere scintilla, or the evidence establishes conclusively the opposite of the vital fact. *Id.*

Moreover, Appellate Courts do not substitute their judgment for that of the fact finder, even if the reviewing court would have reached a different conclusion when reviewing the evidence. *See FDIC v. F & A Equip. Leasing,* 854 S.W.2d 681, 684

(Tex.App.-Dallas 1993, no writ).

Instead, the Appellate Court considers the evidence in the light most favorable to the finding under review and indulge every reasonable inference in support of the judgment. *City of Keller*, 168 S.W.3d at 822; *Vickery v. Comm'n for Lawyer Discipline,* 5 S.W.3d 241, 252 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). Unchallenged findings of fact are binding on an Appellate Court unless the contrary is established as a matter of law. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex.1986). Where the trial court makes findings of fact but inadvertently omits an essential element of a ground of recovery or defense, the court will imply findings in support of the judgment. *See* TEX. R. CIV. P. 299; *Vickery*, 5 S.W.3d at 252.

Additionally, the Appellate Court will uphold conclusions of law on appeal if the judgment can be sustained on any legal theory the evidence supports. *See 2616 S. Loop L.L.C. v. Health Source Home Care, Inc.,* 201 S.W.3d 349, 355 (Tex.App.-Houston [14th Dist.] 2006, no pet.). Incorrect conclusions of law do not require reversal if the controlling findings of fact support the judgment under a correct legal theory. *Id.*

Finally, in a bench trial, the trial court is the sole determiner of the credibility of the witnesses and the weight to be given their testimony. *See Cohn v. Comm'n for Lawyer Discipline,* 979 S.W.2d 694, 696-97 (Tex.App.-Houston [14th Dist.] 1998,

no pet.); *Nordstrom v. Nordstom,* 965 S.W.2d 575, 580-81 (Tex.App.-Houston [1st Dist.] 1997, pet. denied). The trial court, as the finder of fact, may consider all of the evidence and circumstances and can reject or accept all or part of a witness's testimony. *Nordstrom,* 965 S.W.2d at 580-81.

## V.  ISSUES PRESENTED

1.  The Lease Agreement between the landlord and the Appellee does not prevent the affirmation of the Trial Court's Final Judgment on the Appellee's claims for damages against the Appellant under the Texas Deceptive Trade Practices Act and promissory estoppel causes of action.

2.  Any contractual relationship between the Appellee and the landlord does not prevent the affirmation of the Trial Court's Final Judgment on the Appellee's claims for damages against the Appellant under the Texas Deceptive Trade Practices Act and promissory estoppel causes of action.

3.  The Statute of Frauds nor the Statute of Conveyances prevent the affirmation of the Trial Court's Final Judgment on the Appellee's claims for damages under the Texas Deceptive Trade Practices Act and promissory estoppel causes of action.

## A.  Issues

**1.  The Lease Agreement between the landlord and the Appellee does not prevent the affirmation of the Trial Court's Final Judgment on the Appellee's claims for damages against the Appellant under the Texas Deceptive Trade Practices Act and promissory estoppel causes of action.**

A.  The Lease Agreement does not preclude a finding of detrimental reliance by the Trial Court on the Appellee's claims for damages against the Appellant under the Texas Deceptive Trade Practices Act

The question of whether an adequate disclaimer of reliance exists is a matter

of law. *See Schlumberger Technology Corp. v. Swanson*, 959 S.W.2d 171, at 181 (Tex.1997). In construing a contract, a court must ascertain the true intentions of the parties as expressed in the writing itself. *See J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 229 (Tex.2003). In identifying such intent, courts must "must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Id.*

After a careful review of the Lease Agreement sections cited by the Appellant in its Amended Brief, it is clear that the Lease Agreement does not contain a disclaimer of any extra contractual representations or reliance. (PX 3).

First, Section 17.15 is a condition precedent clause contained within the Lease Agreement. (PX 3, page 10). A condition precedent to a contract is an act or event that must occur before the defendant is required to perform its own obligations. *See Solar Applications Engineering, Inc. v. T.A. Operating Corp.,* 327 S.W.3d 104, 108 (Tex.2010). Accordingly, Section 17.15 of the Lease Agreement is incorrectly cited by the Appellant as evidence of a disclaimer of any and all extra-contractual representations, when in fact it is only a condition precedent clause and thus cannot be relied upon as proof of any disclaimer of detrimental reliance on the part of the Appellee.

Next, Section 17.17 of the Lease Agreement is representative of a classic

merger clause. (PX 3, page 10). A typical merger clause states that the written terms of a contract may not be varied by prior agreements, because all such agreements have been merged into the written document. *See Ikon Office Solutions Inc. v. Elfert,* 125 S.W.3d 113, 125 n.6 (Tex. App. - Houston [14th Dist.] 2003, pet. denied). However, there is an important legal distinction between a merger clause and disclaimer of reliance clause. *See Italian Cowboy Partners Ltd., v. Prudential Insurance Co. of America,* 341 S.W.3d 323, at 333 (Tex. 2011).

In *Italian Cowboy Partners Ltd.*, the Texas Supreme Court held that pure merger clauses, **without an expressed clear and unequivocal intent** to disclaim reliance or waive claims for fraudulent inducement, will not have the effect of precluding claims based on detrimental reliance. *See Italian Cowboy Partners Ltd.*, 341 S.W.3d at 334; *see also Texas Taco Cabana, L.P. v. Taco Cabana of N.M.,* 304 F.Supp.2d 903 (W.D.Tex.2003)[1]

A plain reading of the clause contained within Section 17.17 of this Lease Agreement clearly shows that it is not reflective of the type of *"express, clear and*

---

[1] In *Texas Taco Cabana*, the Court held that: "Acknowledgment clauses may bar only representations expressly excluded by the written disclaimer. Here the acknowledgment of non-reliance quoted by Counter–Defendants refers only to financial projections. It does not bar the Franchisee from producing evidence of reliance on the Franchisor's subsequent representations related to matters outside the scope of the disclaimers. Since the Franchisee's DTPA claims do not involve the subject matter of the disclaimers, the Court finds that there has been no waiver of reliance on the part of the Franchisee. Because the claims are based on alleged deceptive acts of Franchisor beyond a disagreement of interpretation and reliance has not been waived, it is proper to deny the motion to dismiss the claims of Violation of the Texas Deceptive Trade Practices Act." *Id*, at 911.

*unequivocal"* language required to contractually disclaim reliance under Texas law. (PX 3, page 10). Indeed, Section 17.17 does not disclaim any form of reliance but instead represents a boilerplate merger clause which does not suffice to disclaim reliance under the strict language requirement promulgated by the Texas Supreme Court in the *Italian Cowboy Partners Ltd.,* holding.

Additionally, the application and effect of the merger clause contained within Section 17.17 of the Lease Agreement would only be relevant in the review of claims brought against the landlord, as the party to the Lease Agreement, and not against claims brought against a third party like the Appellant.

In the instant matter, all of the Appellee's causes of action arise directly from the misrepresentations of the Appellant who was not a party to the Lease Agreement and thus cannot avail itself of the protections of any contractual safeguards contained within the Lease Agreement designed to shield the landlord from liability. *See Bowe v. GMC/Pontiac Div.*, 830 S.W.2d 775 (Tex.App.—Houston [1st Dist.] 1992, writ denied) (disclaimer of warranties was automobile dealer's alone and did not apply to manufacturer; disclaimer applied to the sale of goods and not the sale of repair services).

Accordingly, Section 17.17 of the Lease Agreement does not preclude the finding of detrimental reliance by the Trial Court in its Final Judgment.

Finally, Section 17.18 of the Lease Agreement represents a classic "no-oral modification" clause. Under Texas law, written clauses contained within a contract not to modify a contract except in writing are unenforceable as a matter of law. *See Adams v. Can-Dee Oil Corp.,* 357 S.W.2d 808 (Tex.Civ.App. Waco 1962 writ ref'd n.r.e.) ("A written agreement not to modify a contract except in writing does not preclude an oral modification")

Consequently, in addition to its lack of relevance to any disclaimer of reliance analysis, Section 17.18 is unenforceable as a matter of law and thus does not act to prevent the affirmation of the Trial Court's Final Judgment on the Appellee's claims under the Texas Deceptive Trade Practices Act (DTPA).

B.   <u>The Lease Agreement does not preclude a finding of detrimental reliance by the Trial Court on the Appellee's claims for damages against the Appellant under promissory estoppel causes of action</u>

Promissory estoppel is available to a promisee who has acted to his detriment in reasonable reliance on an otherwise unenforceable promise. *See Henderson v. Texas Commerce Bank-Midland, N.A.,* 837 S.W.2d 778, 781-82 (Tex. Ct.App.-El Paso 1992, writ denied). To prove an action for promissory estoppel, the plaintiff must establish the defendant made a promise to the plaintiff. *See English v. Fischer*, 660 S.W.2d 521, 524 (Tex.1983). A promise may be made orally or in writing or may be inferred from conduct. *See Fretz Construction Co. v. Southern Nat'l Bank,* 626

S.W.2d 478, 483-84 (Tex.1981).

Furthermore, the plaintiff must also establish it reasonably and substantially relied upon the Defendants promise to its detriment. *See English*, 660 S.W.2d at 524. As part of the reliance requirement, it must be shown that said reliance caused injury to the plaintiff. *See Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 770 (5th Cir. 1988).

Moreover, contrary to the position of the Appellant in its Amended Brief, privity of contract is not required to support a claim for damages under promissory estoppel. *See "Moore" Burger, Inc. v. Phillips Petroleum Co.,* 492 S.W.2d 934, 936 (Tex.1972); *see also Wheeler  v. White*, 398 S.W.2d 93, 96 (Tex.1965). In the *Wheeler* opinion, the Texas Supreme Court addressed this issue as follows:

> 'This (promissory estoppel) does not create a contract where none existed before, but only prevents a party from insisting upon his strict legal rights when it would be unjust to allow him to enforce them. . . . The function of the doctrine of promissory estoppel is, under our view, defensive in that it estops a promisor from denying the enforceability of the promise."

*Wheeler*, 398 S.W.2d at 96.

In fact, privity of contract is an **affirmative defense** to the enforcement of a claim based on promise estoppel. *See Stable Energy, L.P. v. Kachina Oil & Gas, Inc.*, 52 S.W.3d 327, 336 (Tex.App.-Austin 2001, no pet.); *see also Richter v. Wagner Oil*

*Co.,* 90 S.W.3d 890, 899 (Tex.App.-San Antonio 2002, no pet.) (Promissory estoppel is not applicable to a promise covered by a valid contract between the parties). Accordingly, had the Appellee sough enforcement of the Lease Agreement her claims would have lied exclusively under a breach of contract theory against the landlord, thus precluding her ability to recover under a theory of promissory estoppel against the Appellant. However, as this Court is aware, the Appellee's claims, found to be supported by a preponderance of the evidence by the Trial Court, were based under theories of promissory estoppel and DTPA against the Appellant.

Indeed, the Appellee's claims based on promissory estoppel are rooted exclusively on the actions taken by the Appellant separate and apart from the contractual agreements contained within the Lease Agreement between the Appellee and the landlord. Ironically, the undisputed evidence presented at trial in this case established that the Appellant, through its employees, agents, and/or representatives, repeatedly made representations and/or promises to the Appellee, that the Appellee and landlord **were parties to an enforceable lease agreement,** which Appellee detrimentally relied upon resulting in substantial injuries. (CR 752-760). Accordingly, the very promise of the **existence of an enforceable lease agreement** made to the Appellee (promisee) by the Appellant (promisor) was the catalyst for the Appellee's damages.

As a result, the existence of privity of contract between the Appellant and Appellee is not required to affirm the Trial Court's Final Judgment on the Appellee's claims for damages under promissory estoppel.

C.     Appellee's claims for detrimental reliance are not limited to the actions and/or representations of Alaniz

In reviewing a factual sufficiency challenge, courts consider and weigh all the evidence supporting and contradicting the challenged finding and set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *see Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989).

In its Amended Brief, the Appellant argues that "basic logic" somehow prevents this Court from affirming the Trial Court's Final Judgment on the issue of detrimental reliance. The Appellant focuses its argument exclusively on the conduct of Alaniz, the real estate broker who brokered the Lease Agreement. However, the Appellant fails to cite any of the evidence presented to the Trial Court on the Appellee's reliance on the representation and actions taken by Noel Harris and Patricia Lowery, employees and undisputed agents of the Appellant.

Said actions included the following:

1.     Providing the Appellee with a key to her unit; (R.R. Vol. 5; p. 92 lines 19-21; p. 118, lines 19-25, p. 119, lines 1-23; p. 146, lines

18-21);

2. Providing the Appellee with a gate code to her unit; (R.R. Vol. 5; p. 92 lines 19-21; p. 118, lines 19-25, p. 119, lines 1-23; p. 146, lines 18-21)

3. Allowing the Appellee to move into her unit without objection for a period of five days; (R.R. Vol. 5; p. 123, lines 5-25, p. 124 lines 1-11);

4. Locking the Appellee out of her unit without prior notice and with actual knowledge of her property being within the suit; (R.R. Vol. 5; p. 57, lines 23-25; p. 58, line 1 and lines 16-23);

5. Locking the Appellee out of her unit before a credit check was performed; (R.R. Vol. 5; p. 51, lines 1-6; p. 60, lines 7-13);

6. Locking the Appellee out of her unit despite her compliance with all of the terms of the Lease Agreement; (R.R. Vol. 5; p. 84, line 25; p. 85, lines 1-5);

7. Refusing to provide the Appellee with a copy of her credit report to verify the information; (R.R. Vol. 5; p. 109, lines 1-10); *and*

8. Refusing to allow the Appellee to pick up her belongings from late January 2012 through trial and this appeal; (R.R. Vol. 5; p. 55, lines 2-7 and lines 24-25, p. 56, lines 1-2; p. 94 lines 22-25; p. 95 lines 1-10).

Consequently, assuming arguendo that the Appellee's reliance on the actions of Alaniz were somehow misguided or defied "basic logic" (which is not the standard of review), this Court should still affirm the damages awarded to the Appellee for the independent violations of the DTPA and promissory estoppel committed by Harris

and Lowery.

D.     <u>There was no judicial admission by the Appellee that would prevent her recovery under the DTPA or promissory estoppel.</u>

A judicial admission must be a clear, deliberate, and unequivocal statement, and "occurs when an assertion of fact is conclusively established in live pleadings, making the introduction of other pleadings or evidence unnecessary." *See Regency Advantage Ltd. Partnership v. Bingo Idea–Watauga, Inc.,* 936 S.W.2d 275, 278 (Tex.1996); *See also Chilton Ins. Co. v. Pate & Pate Enters., Inc.*, 930 S.W.2d 877, 884 (Tex.App.—San Antonio 1996, writ denied). A judicial admission " 'not only relieves [an] adversary from making proof of the fact admitted but also bars the party himself from disputing it.' " *See Id.* (quoting *Gevinson v. Manhattan Constr. Co.,* 449 S.W.2d 458, 466 (Tex.1969)). Once a fact is conclusively established by judicial admission, jury questions concerning the fact need not be submitted. *See Id. at 886.*

In its Amended Brief, the Appellant argues that the Appellee's pleadings represented a judicial admission on the issue of the Appellee's detrimental reliance on the representations of the Appellant. However, the fact that the Appellee knew during the week of January 13, 2012 that the Lease Agreement would not be executed until the following week does not represent a judicial admission that the Appellee somehow deduced that she was not ultimately going to be approved as a tenant, thus

precluding reliance.

In fact, the Appellee's understanding was later validated when Alaniz subsequently presented the Appellee with a fully prepared Lease Agreement approximately a week later. (R.R. Vol. 5; p. 49, lines 20-25, p. 82 lines 23-25, p. 83 lines 1-4). This important act by Alaniz not only substantiated the reasonableness of the Appellee's reliance on the earlier representations of Alaniz, but it also confirms that the Appellee knew she was to be bound by the terms of the Lease Agreement. (PX 3, page 11).

Nonetheless, this admission is irrelevant to the claims successfully prosecuted by the Appellee at trial involving the misrepresentations, DTPA laundry list violations and promises made by the Appellant about the Appellee's acceptance as a tenant with the landlord.

**2.  Any contractual relationship between the Appellee and the landlord does not prevent the affirmation of the Trial Court's Final Judgment on the Appellee's claims for damages against the Appellant under the Texas Deceptive Trade Practices Act and promissory estoppel causes of action.**

    A.    <u>The Trial Court's Final Judgment is not conditioned upon the enforcement of the Lease Agreement</u>

There is no requirement that a consumer have an enforceable contract under Section 26.01 of the Texas Business and Commerce Code as an element necessary to sustain recovery. Additionally, under the DTPA a consumer is not required to make

an actual purchase. *See Herrin v. Medical Protective Co.,* 89 S.W.3d 301, 310 (Tex. App. – Texarkana 2002, pet denied). Rather a person who merely seeks or acquires goods or services is a consumer within the protection of the DTPA. *Id.*

Furthermore, merely seeking, but not actually acquiring, services is enough to satisfy the "consumer" requirement under DTPA. *See Sears, Roebuck and Co. v. Wilson,* 963 S.W.2d 166, 170 (Tex. App. – Fort Worth 1998, no pet.). Although a prospective buyer must approach prospective seller with a subjective, good faith objective of purchasing services, no money need change hands to establish consumer status. *Id.*

In *Kennedy v. Sale*, the Texas Supreme Court held that the DTPA does not require the consumer to be an actual purchaser or lessor of the goods or services, as long as the consumer is the beneficiary of those goods or services. *See Kennedy v. Sale* 689 S.W.2d 890 (Tex.1985). Instead, Texas law has only required a DTPA consumer to be one who in good faith initiates the purchasing process. *See Martin v. Lou Poliquin Enterprises, Inc.,* 696 S.W.2d 180, 184 (Tex. App. – Houston [14th Dist.] 1985, writ ref'd n.r.e.). An individual initiates the purchasing process when he (1) presents himself to the seller as a willing buyer with the subjective intent or specific "objective" of purchasing, and (2) possesses at least some credible indicia of the capacity to consummate the transaction. *Id.* at 184–85.

It is important to point out that the Appellee's DTPA complaints are not that the landlord somehow failed to comply with the terms of the Lease Agreement. Rather, the Appellee's complaints are that the Appellant and its agents engaged in conduct during the negotiation and execution of the Lease Agreement, which were found to be false, misleading, deceptive acts or practices that are specifically enumerated in TEX. BUS. & COM. CODE §17.45(4), and which were relied upon by the Appellee to her detriment. Additionally, Appellee's complaints are also based on the Appellant's acts and conduct which amounted to an enforceable promise under promissory estoppel.

In its Amended Brief, the Appellant also argues that Section 15.06 of the Lease Agreement somehow places the Appellee on notice that a financial statement is a condition precedent to occupancy of her commercial space. First, a plain reading of Section 15.06 would dispel any notion that it is intended to mean that a financial statement will be required **prior** to the execution of the Lease Agreement or the Appellee's occupancy of the subject property. (PX-3) Instead, Section 15.06 clearly stands for the proposition that if/when the tenant submits financial information to the landlord, said tenant warrants that the submitted information shall be true and correct. (PX-3).

Second, it is undisputed that the Appellee submitted her financial information

to the Appellant and that said information was true and correct [2]. Accordingly, even if Section 15.06 were relevant to this Court's inquiry, it is undisputed that the Appellee complied with said terms. Finally, it should be noted that there is not a single section or addendum to the Lease Agreement that requires a tenant to complete a credit check or be approved by way of credit check prior to becoming a tenant or the Lease Agreement becoming binding. (PX-3) (R.R. Vol. 5; p. 50, lines 24-25, p. 51, lines 1-6; p. 88, lines 4-9 ).

This fact was corroborated at trial with testimony from Noel Harris who testified there was never any credit report run on several of the existing and prior tenants at the Subject Property.  (R.R. Vol. 5; p. 88, lines 4-9; p. 89, lines 5-15).

Consequently, the Appellant's attempts at justifying the Appellant's actions in locking the Appellee out of her commercial space based on Section 15.06 of the Lease Agreement is misplaced.

B.      The Appellant is not entitled to damages for bailment

To create a bailment, there must be (1) delivery of personal property from one person, the bailor, to another, the bailee, for a specific purpose; (2) acceptance of delivery by the bailee; (3) an express or implied contract between the parties that the

---

[2] Although the Appellee submitted the correct personal identification information requested by the Appellant for use on a credit report, the Appellant's credit report contained financial and personal information on individuals who were not the Appellant and was thus unreliable. (D.X.2, D.X. 3).

specific purpose will be realized; and (4) an agreement between the parties that the property will be either returned to the bailor or dealt with according to the bailor's direction. *See State v. $281,420.00 in United States Currency*, 312 S.W.3d 547, 551 (Tex.2010); *See also Cessna Aircraft Co. v. Aircraft Network, LLC*, 213 S.W.3d 455, 462–63 (Tex.App.-Dallas 2006, pet. denied).

To establish a bailment relationship, the evidence must demonstrate that the entity sought to be charged as bailee knew that it was assuming such relationship and responsibilities before it will be charged with the duties of bailee. *See DeLaney v. Assured Self Storage,* 272 S.W.3d 837, 839 (Tex.App.-Dallas 2008, no pet.); *See also Hoye v. Like*, 958 S.W.2d 234, 237 (Tex.App.-Amarillo 1997, no pet.).

In the instant matter, the Appellant was not the landlord or owner of the subject property, but was instead the agent of the landlord/owner and thus would not be owed any recovery under a theory of bailment since there could be no damages sustained by a party who is not the bailee. Next, there was no express or implied contract between the Appellant and Appellee and thus the Appellant has failed to meet its burden of proof on this important element.

Finally, and of paramount importance to this appellate issue, the Appellant failed to present, develop, or submit any evidence to support its counterclaim for damages under bailment during trial thus waiving said claim. Indeed, the only trial

reference cited by the Appellant in its Amended Brief is found during the closing argument stage of trial in which the time to offer and submit evidence had effectively closed. As a result, said counterclaims were effectively waived by Appellant's trial counsel.

**3.** **The Statute of Frauds nor the Statute of Conveyances prevent the affirmation of the Trial Court's Final Judgment on the Appellee's claims for damages under the Texas Deceptive Trade Practices Act and promissory estoppel causes of action.**

    A. <u>Enforcement of the Texas Deceptive Trade Practices Act does not require the elements of the Texas Statute of Frauds to be satisfied.</u>

A review of Texas law reveals that Texas Courts have consistently held that the statue of frauds is not a bar to recovery under the DTPA. The relationship between the statute of frauds and the DTPA was originally examined by the Texas Supreme Court in the *Weitzel* opinion. In *Weitzel*, the Texas Supreme Court held that oral representations outside of a contract are not only admissible but can serve as the basis of a DTPA action. *See Weitzel v. Barnes,* 691 S.W.2d 598, 600 (Tex.1985). The Texas Supreme Court went on to state that:

> "The oral misrepresentations, witch were made both before and after the execution of the agreement, constitute the basis of this cause of action, so traditional contractual notions do not apply."

*Weitzel,* 691 S.W.2d at 600.

This very issue was also addressed by the 11th Court of Appeals in the *Lawson*

decision. In *Lawson*, the court held that the Defendant was precluded from summary judgment on the issue of whether or not the statute of frauds prevented recovery under the DTPA[3]. *See Lawson v. Commercial Credit Business Loans, Inc.,* 690 S.W.2d 679 (Tex.App. – Eastland, 1985, writ ref'd n.r.e). The Court opined as follows:

> " Further, we hold that the Statute of Frauds, supra note 3, does not insulate Commercial Credit from liability under the Deceptive Trade Practices Act, supra note 2, for the false and misleading statements which its employees made to Lawson when they found a bidder who would pay more money for the jewelry."

*Lawson,* 690 S.W.2d at 681.

The *Lawson* holding was extended by the United States District Court - Northern District of Texas in the *McClure* opinion. *See McClure v. Duggan,* 674 F.Supp. 211, 221-22 (N.D.Tex.1987). The Court in *McClure* found the following:

> "In the instant case, McClure has alleged that Duggan made a factual misrepresentation independent of the alleged unenforceable agreement to sell Foscarini. The alleged misrepresentation is that the horse would not "vet." This alleged false oral statement is disconnected from the underlying contract and creates a genuine issue of fact material as to Duggan's DTPA claims. Since the facts of the instant case are on point with those of *Lawson*, the statute of frauds will not, as a matter of law, insulate Duggan from liability for his alleged fraudulent misrepresentations under the DTPA. As the court in *Lawson* stated, the question of whether Duggan did more than merely fail to perform under

---

[3] Of relevance to the facts of the instant matter, the *Lawson* Court also held that the fact that a would be buyer's check was not cashed does not prevent the establishment of "consumer" status under the DTPA. *Lawson, 690 S.W.2d at 681*

the agreement is a fact question for the jury. *Id,.* at 681. Thus, McClure's DTPA claim for misrepresentation is not barred by the statute of frauds."

Texas courts have also consistently held that the transfer of valuable consideration as an element for a breach of contract cause of action is not a prerequisite to consumer status under the DTPA. *See Roberts v. Burkett,* 802 S.W.2d 42, 47 (Tex. App. Corpus Christi 1990, no writ); *see also Lou Poliquin Enterprises, Inc.,* 696 S.W.2d 180 at 184.

Accordingly, assuming arguendo that Appellee did not have an enforceable contract for the leasing of the real property at question under the statute of frauds, this argument has no bearing on the Appellee's ability to recover damages under the DTPA against the Appellant for independent deceptive trade practices.

Since its inception, the DTPA has been a remedy for consumer claims that are not contingent upon proof of a valid and enforceable contract or satisfaction of the statute of frauds. Indeed, the DTPA was designed exclusively to remedy deceptive trade practices committed by a defendant on a consumer who was only *seeking or acquiring* goods or services including a lease agreement. *See* TEX. BUS. & COM. CODE § 17.41-17.63. As a result, the applicability of the statute of frauds or the requirement of an enforceable contract to support the Trial Court's findings of fact and conclusions of law would be contrary to well established Texas legal precedent

and statutory authority.

  B. <u>The Lease Agreement at issue was for less than one year thus precluding application of the Statute of Frauds.</u>

To prove the defense of the statute of frauds, the defendant must first establish the contract is subject to the statute of frauds. *See Walker v. Tafralian,* 107 S.W.3d 665, 668 (Tex.App.- Fort Worth 2003, pet. denied.) It is undisputed that a contract for one year or less from the date of its making is ***not subject*** to the Statute of Frauds. *See* TEX. BUS. & COM. CODE ANN. § 26.01 (Vernon 1987*); see also Shaheen v. Motion Indus.,* 880 S.W.2d 88, 91 (Tex.App. - Corpus Christi 1994, writ denied). In the instant matter, the Lease Agreement at issue was for the leasing of the subject commercial space for <u>12 months</u> commencing on February 1, 2012. (PX 3) (R.R. Vol. 5; p. 67, lines 15-21).

Although Appellant argues that the Lease Agreement began on January 27, 2012 and was set to end on January 31, 2013,  that argument is contrary to the evidence the Trial Court examined in this case, including testimony from the Defendant's corporate representative and former property manager as well as the Lease Agreement itself which clearly states that the Lease Agreement is for 12 months and commences on February 1, 2012. (PX-3) (R.R. Vol. 5; p. 67, lines 15-21; p. 85, lines 14-21).

Furthermore, the Trial Court found in its findings of fact that the Appellee *"executed"* a Lease Agreement with the owner on January 26, 2012 but did not issue a finding of fact as to when the Lease Agreement was to begin. (CR 752-760) Said evidence is contained within the Lease Agreement itself which unequivocally states that the Lease Agreement would begin on February 1, 2012. (PX-3).

As a result, and contrary to the representations made by Appellant in its Amended Brief, the Lease Agreement at issue was for a period of time that fell outside of the purview of the Statute of Frauds thus precluding the need for the Statute of Frauds to be satisfied for enforcement of Appellee's Final Judgment.

C.    Promissory Estoppel is a well established exception to the Statute of Frauds

It is well settled law that promissory estoppel applies to bar the application of the statute of frauds and allow the enforcement of an otherwise unenforceable oral agreement when (1) the promisor makes a promise that he should have expected would lead the promisee to some definite and substantial injury; (2) such an injury occurred; and (3) the court must enforce the promise to avoid the injury. *See Nagle v. Nagle,* 633 S.W.2d 796, 800 (Tex.1982); *see also "Moore" Burger,* 492 S.W.2d at 936.

To prove an action for promissory estoppel, the plaintiff must establish the

defendant made a promise to the plaintiff. *See English*, 660 S.W.2d at 524. A promise may be made orally or in writing or may be inferred from conduct. *See Fretz*, 626 S.W.2d at 483-84. The undisputed evidence presented at trial in this case established that Appellant, through its officers, agents, and/or representatives, repeatedly made representations and/or promises to Appellee that the landlord and Appellee were parties to an enforceable Lease Agreement, which Appellee detrimentally relied upon resulting in substantial injuries. (CR 752-760).

Appellant's numerous promises regarding the existence of an enforceable lease agreement, for which it should have expected would lead to injury, were as follows:

1. Appellant's disclosure to Appellee that her Lease Agreement had been accepted by the landlord and that she was approved to move into her commercial unit in February, 2012 (R.R. Vol. 5; p. 19, lines 8-13; p. 20, lines 16-19; p. 20, lines 21-23; p. 53, lines 3-5; p. 113, lines 2-5 and 15-17, p. 126, lines 18-22);

2. Appellant's acceptance of Appellee's payment for the security deposit and first month's rental amount per the terms of the Lease Agreement (R.R. Vol. 5; p. 66, lines 4-25; p. 67, lines 1-2; p. 152, lines 16-25);

3. Appellee executed the Lease Agreement in the office of the agent of Appellant on January 26, 2013 without any objection or qualification (R.R. Vol. 5; p. 49, lines 20-25, p. 82 lines 23-25, p. 83 lines 1-4);

4. Appellant prepared a Lease Agreement tailored to Appellee, including placing her name, correct suite number and lease term in the Lease Agreement which was ultimately executed by Appellee (PX-3);

5. Appellant provided Appellee with a key to her unit (R.R. Vol. 5;p. 92 lines 19-21; p. 118, lines 19-25, p. 119, lines 1-23; p. 146, lines 18-21);

6. Appellant provided the Appellee with a gate code to her unit (R.R. Vol. 5; p. 92 lines 19-21; p. 118, lines 19-25, p. 119, lines 1-23; p. 146, lines 18-21); *and*

7. Appellant allowed the Appellee to move personal property and merchandise into the commercial unit without objection for five days (R.R. Vol. 5; p. 123, lines 5-25, p. 124 lines 1-11);

Furthermore, to prove an action for promissory estoppel, the plaintiff must establish it reasonably and substantially relied upon the Defendants promise to its detriment. *See English*, 660 S.W.2d at 524. As part of the reliance requirement, it must be shown that said reliance caused injury to the Plaintiff. *See Southmark Corp. v. Life Investors, Inc.*, 851 F.2d at 770. In reliance upon the promises made by Appellant, evidence at trial showed Appellee took the following actions which caused Appellee substantial injury:

1. Obtained Commercial Policy #605072070 through Farmers Insurance Group (PX 7; R.R. Vol. 5; p. 99, lines 8-25; p. 100, lines 1-2);

2. Purchased $2,843.48 worth of supplies, materials and merchandise to be used in her new place of business. (PX 1, 2, 4, 5, 6, 8,9,10; R.R. Vol. 5; p. 18, lines 12-14 and lines 17-18, p. 97, lines 1-9, 17-24; p. 98, lines 5-20, p. 100, lines 8-22, p. 101, lines 24-25, p. 102, lines 1-25, p. 104, lines 23-25, p. 105, lines 1-25, p. 106, lines 6-25, p. 107, lines 1-25, p. 117, lines 12-25, p. 153, lines 16-25; p. 156 lines 21-24);

3. Purchased checks for her new business account. (PX 4; R.R. Vol. 5; p.

96, lines 19-25;  p. 97, lines 1-9);

4.    Opened up new business checking account with Bank of America. (R.R. Vol. 5; p. 17, lines 21-23); *and*

5.    Quit her job as Office Manager with Sealevel Management. (R.R. Vol. 5; p. 113, lines 15-17, page 114, lines 3-6, page 115, lines 25, page 116, lines 1-3, page 116, lines 7-18).

Additionally, to prove an action for promissory estoppel, it must be established that plaintiff's reliance on the defendant's promise was foreseeable. *See Ford v. City State Bank*, 44 S.W.3d 121, 139 (Tex.App. - Corpus Christi 2001, no pet.). As previously argued above, it was entirely foreseeable that a party who signs a lease agreement, is told that she has been accepted as a tenant, pays rent and a security deposit, is given unfettered access to the unit with a key and gate card, and is allowed to move her items into the unit without objection for five days would reasonably believe that she has been accepted as a tenant by the landlord.

As shown at trial, and found to be sufficient evidence by the Trial Court, all of the actions cited herein taken by Appellee proved that she foreseeably relied upon the acts and conduct of Appellant to her detriment. (CR 52-60).  Consequently, there is no question as to the proof being met for the forseeability element of promissory estoppel.

Finally, to prove an action for promissory estoppel, the plaintiff must establish

that injustice can be avoided only by enforcing the promise. *See Collins v. Walker,* 341 S.W.3d 570, 573-74 (Tex.App. - Houston [14th Dist.] 2011, no pet.). After a thorough review of the relevant Texas case law on promissory estoppel counsel for the Appellee has yet to locate a case that sets out a bright line test for establishing that injustice can be avoided only by enforcing a promise under promissory estoppel. However, clearly the Trial Court found that the only way to avoid the injustice committed upon the Appellee was to enforce the promises made to her by Appellant. (CR 752-260). This was a decision made by the trial court after hearing all of the evidence including the testimony of Appellee, and thus should be affirmed by this Court.

D.    Enforcement of the Texas Deceptive Trade Practices Act does not require the elements of the Texas Statute of Conveyances to be satisfied.

Under Texas Property Code Section 5.021, "A conveyance of an estate of inheritance, a freehold, or an estate for more than one year, in land and tenements, must be in writing and must be subscribed and delivered by the conveyor or by the conveyor's agent authorized in writing." *See* TEX. PROP. CODE § 5.021. Because the test for sufficiency of writing is essentially same in both Statute of Frauds and Statute of Conveyances, this section of Appellee's Reply Brief will frequently incorporate by reference the same or similar arguments raised previously in response to Appellate

point #2. *See West Beach Marina, Ltd. v. Erdeljac*, 94 S.W.3d 248 (Tex.App.—Austin 2002, no pet.).

Again, and as stated previously herein, there is no requirement under the DTPA that a consumer have an agreement in writing and signed and delivered by the defendant or by the defendant's agent authorized in writing, in order to bring a cause of action under the Act. *See* TEX. BUS. & COM. CODE ANN. § 17.41-17.63. This statutory exception to Texas common law defenses was best articulated by Professor Richard Aldeman in his legal article discussing the DTPA:

> " It also is significant to note that common law defenses, applicable to a breach of contract or tort claim, essentially are inapplicable to a claim under the DTPA. The DTPA does not represent a codification of the common law and, therefore, common law defenses do not apply. For example, the doctrine of "substantial performance" has been held not to apply to the DTPA,107 as has the "parol evidence rule."108 Waiver and estoppel are also inapplicable to a claim under the Act.109."

*See* Richard M. Alderman, *The Texas Deceptive Trade Practices Act In Context: Not All That Bad; Presented by: The Center for Consumer Law*, Houston, Texas, October 23, 2009, Page 23.

Nonetheless, Appellant continuously argues that both the statute of frauds and the statute of conveyances bar Appellee's causes of action. However, Appellee's evidence of the Lease Agreement was only used to show how the Appellee detrimentally relied upon the misrepresentations and empty promises of Appellant

during the time in question resulting in her damages. It is axiomatic that the Appellee does not need to enforce the Lease Agreement in question to sustain the Trial Court's findings of fact and conclusions of law since all of said findings are not based in contract.

Indeed, all the Appellee must show under the DTPA is that the conduct of Appellant was the "producing cause" of Appellee's damages. *See Alexander v. Turtur & Associates,* 146 S.W.3d 113, 117 (Tex.2004). An actual purchase or "conveyance" need not occur for a person to be a consumer under the DTPA. *See Herrin, at* 89 S.W.3d 310.

Similarly, under her theory of promissory estoppel the Appellee is also only required to show that an injury occurred as a result of the promisee's detrimental reliance on the promise of the promisor. *See Stanley v. CitiFinancial Mortg. Co.,* 121 S.W.3d 811, 820 (Tex.App. - Beaumont 2003, pet denied). Accordingly, the statute of frauds and statute of conveyances are not applicable to this Court's inquiry and are irrelevant to any appellate review of the finding of fact and conclusion of law found by the Trial Court.

E.    The Lease Agreement at issue was for less than one year thus precluding application of the Statute of Conveyances

A contract for one year or less from the date of its making is not subject to the

Statute of Frauds or Statute of Conveyances. *See* TEX. PROP. CODE § 5.021; *see also*

*Shaheen.,* 880 S.W.2d at 91. Once again, it is undisputed that the Lease Agreement

at issue was for the leasing of the subject commercial space for <u>12 months</u>

commencing on February 1, 2012. (PX 3) (R.R. Vol. 5; p. 67, lines 15-21; p. 85, lines

14-21).

A similar fact pattern to the case at hand was examined by the 4th Court of

Appeals in the *McDonald* opinion in which the court held that a lease agreement that

was for one year did not have meet the statute of conveyances or the statute of frauds.

*See McDonald v. Roemer,* 505 S.W.2d 698, 699 (Tex.Civ.App.-San Antonio 1974,

no writ).

As a result, and contrary to the representations made by Appellant in it's

Amended Brief, the Lease Agreement at issue was for a period of time that fell

outside of the purview of the statute of conveyances thus precluding the need for the

statute of conveyances to be satisfied for affirmation of Appellee's Final Judgment.

F.     <u>Enforcement of the Appellee's Promissory Estoppel claims does not require the elements of the Texas Statute of Conveyances to be satisfied.</u>

Appellee's right to recover under the theory of promissory estoppel is not

conditioned upon the Lease Agreement satisfying the statute of conveyances. As

previously argued herein, there is no requirement under promissory estoppel law

requiring a plaintiff to prove the existence of an enforceable contract for the

conveyance of real property in order for a party to recover for their detrimental reliance on the promises of a defendant. *See Collins,* 341 S.W.3d at 573-74; *see also "Moore" Burger*, 492 S.W.2d at 936.

The elements of an action for promissory estoppel are the following:1. The defendant made a promise to the plaintiff 2. The plaintiff reasonably and substantially relied on the promise to its detriment. 3. The plaintiff's reliance was foreseeable by the defendant. 4. Injustice can be avoided only by the enforcement of the promise. *See Citi Financial Mortg. Co.,* 121 S.W.3d at 820. Accordingly, Texas has no requirement that the parties have in place an enforceable contract for the conveyance of real property in order to proceed under a theory of promissory estoppel at trial.

Furthermore, while it is well settled law that promissory estoppel applies to bar the application of the statute of frauds and allow the enforcement of an otherwise unenforceable oral agreement, it would also be analogous to argue that promissory estoppel provides a similar bar to the application of statute of conveyances since the test for sufficiency of a writing is essentially the same in both the Statute of Frauds and the Statute of Conveyances. *See*, *e.g., Broaddus v. Grout,* 152 Tex. 398, 258 S.W.2d 308, 309 (1953).

Consequently, under either theory of recovery pled for and awarded by the Trial Court, satisfaction of the statute of conveyances is not required and thus this

appellate point should be overruled.

G.    Exception to the Statute of Conveyances Applies

As previously argued herein, the statute of conveyances does not apply to the case at hand. But to the extent this Court considers its applicability to the facts of this case, there is a well established exception to the Statue which is applicable to the instant matter.

An exception to the applicability of the statute of frauds/conveyances can exist if each of the following elements are met: (1) payment of consideration; (2) possession of the leased premises by lessee; and (3) the lessee makes valuable improvements. *See J & J Sys., Inc. v. Towers of Texas, Inc.*, 833 S.W.2d 532, 534 (Tex. App.—Eastland 1991) *rev'd,* 834 S.W.2d 1 (Tex. 1992).

In the instant matter Appellee made payment to Appellant in the form of a deposit and issuance of the first month's rent.  (R.R. Vol. 5; p. 152, lines 16-25). Appellee was also granted access to, and possession of the leased premises. (R.R. Vol. 5; p. 123, lines 5-25, p. 124 lines 1-11). Appellee also made valuable improvements to the leased space by purchasing and placing display cases, merchandise and fixtures in the leased space which remained in the commercial space through time of trial and this appeal. (R.R. Vol. 5; p. 90, lines 12-24; p. 124 line 25; p. 125 lines 1-14; p. 126 lines 1-6).

As a result, the statute of conveyances is also barred as a defense to the

Appellee's claims under the well established exception to the statute of conveyances articulated by the *J & J Sys., Inc.,* holding

## VII  PRAYER

WHEREFORE, PREMISES CONSIDERED, the Appellee prays that this Court affirm the trial court's judgment in all respects,  and further deny the Appellant's request for relief including its request for attorney's fees and costs.

Respectfully submitted,
**ANDERSON, LEHRMAN, BARRE &
MARAIST, L.L.P.**
Gaslight Square
1001 Third Street, Suite 1
Corpus Christi, Texas  78404
Telephone:  (361) 884-4981
Telecopier: (361) 883-4079
randerson@albmlaw.com
jlehrman@albmlaw.com
dmclallen@albmlaw.com


By:  /s/ *Jeffrey Lehrman*
Jeffrey Lehrman
State Bar No. 24074590
Robert Anderson
State Bar No. 01220800
Douglas D. McLallen
State Bar No. 00788025
Attorneys for Appellees

## CERTIFICATE OF COMPLIANCE

I hereby certify that the word count of Appellee's Brief is 9492 words as counted by the word processing software used by Appellee.

/s/ *Jeffrey Lehrman*
Jeffrey Lehrman

## CERTIFICATE OF SERVICE

I certify that on January 5, 2015 a  true and correct copy of foregoing was served on counsel of record as indicated below.

Roy K. Ewart                                    *Via E-Mail: wmnacol@sbcglobal.net*
Law Offices of Mae Nacol
   & Associates, P.C.
8303 Southwest Freeway, Suite 945
Houston, Texas 77074

/s/ *Jeffrey Lehrman*
Jeffrey Lehrman

# APPENDIX

Sec. 17.41.   SHORT TITLE.   This subchapter may be cited as the Deceptive Trade Practices-Consumer Protection Act.

Added by Acts 1973, 63rd Leg., p. 322, ch. 143, Sec. 1, eff. May 21, 1973.

Sec. 17.43.  CUMULATIVE REMEDIES.  The provisions of this subchapter are not exclusive.  The remedies provided in this subchapter are in addition to any other procedures or remedies provided for in any other law;  provided, however, that no recovery shall be permitted under both this subchapter and another law of both damages and penalties for the same act or practice.  A violation of a provision of law other than this subchapter is not in and of itself a violation of this subchapter.  An act or practice that is a violation of a provision of law other than this subchapter may be made the basis of an action under this subchapter if the act or practice is proscribed by a provision of this subchapter or is declared by such other law to be actionable under this subchapter.  The provisions of this subchapter do not in any way preclude other political subdivisions of this state from dealing with deceptive trade practices.

Added by Acts 1973, 63rd Leg., p. 322, ch. 143, Sec. 1, eff. May 21, 1973.  Amended by Acts 1979, 66th Leg., p. 1327, ch. 603, Sec. 1, eff. Aug. 27, 1979;  Acts 1995, 74th Leg., ch. 414, Sec. 1, eff. Sept. 1, 1995.

Sec. 17.44.    CONSTRUCTION AND APPLICATION.    (a)    This subchapter shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection.

(b)    Chapter 27, Property Code, prevails over this subchapter to the extent of any conflict.

Added by Acts 1973, 63rd Leg., p. 322, ch. 143, Sec. 1, eff. May 21, 1973.    Amended by Acts 1995, 74th Leg., ch. 414, Sec. 1, eff. Sept. 1, 1995.

Sec. 17.45. DEFINITIONS. As used in this subchapter:

(1) "Goods" means tangible chattels or real property purchased or leased for use.

(2) "Services" means work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods.

(3) "Person" means an individual, partnership, corporation, association, or other group, however organized.

(4) "Consumer" means an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services, except that the term does not include a business consumer that has assets of $25 million or more, or that is owned or controlled by a corporation or entity with assets of $25 million or more.

Sec. 17.45.  DEFINITIONS.  As used in this subchapter:

(1)  "Goods" means tangible chattels or real property purchased or leased for use.

(2)  "Services" means work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods.

(3)  "Person" means an individual, partnership, corporation, association, or other group, however organized.

(4)  "Consumer" means an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services, except that the term does not include a business consumer that has assets of $25 million or more, or that is owned or controlled by a corporation or entity with assets of $25 million or more.

(5)  "Unconscionable action or course of action" means an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree.

(6)  "Trade" and "commerce" mean the advertising, offering for sale, sale, lease, or distribution of any good or service, of any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value, wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this state.

(7)  "Documentary material" includes the original or a copy of any book, record, report, memorandum, paper, communication, tabulation, map, chart, photograph, mechanical transcription, or other tangible document or recording, wherever situated.

(8)  "Consumer protection division" means the consumer protection division of the attorney general's office.

(9)  "Knowingly" means actual awareness, at the time of the act or practice complained of, of the falsity, deception, or unfairness of the act or practice giving rise to the consumer's claim or, in an action brought under Subdivision (2) of Subsection (a) of Section 17.50, actual awareness of the act, practice, condition, defect, or failure constituting the breach of warranty, but actual awareness may be inferred where objective manifestations

indicate that a person acted with actual awareness.

(10)  "Business consumer" means an individual, partnership, or corporation who seeks or acquires by purchase or lease, any goods or services for commercial or business use.  The term does not include this state or a subdivision or agency of this state.

(11)  "Economic damages" means compensatory damages for pecuniary loss, including costs of repair and replacement.  The term does not include exemplary damages or damages for physical pain and mental anguish, loss of consortium, disfigurement, physical impairment, or loss of companionship and society.

Sec. 17.50. RELIEF FOR CONSUMERS. (a) A consumer may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish:

(1) the use or employment by any person of a false, misleading, or deceptive act or practice that is:

(A) specifically enumerated in a subdivision of Subsection (b) of Section 17.46 of this subchapter; and

(B) relied on by a consumer to the consumer's detriment;

(2) breach of an express or implied warranty;

(3) any unconscionable action or course of action by any person; or

(4) the use or employment by any person of an act or practice in violation of Chapter 541, Insurance Code.

(b) In a suit filed under this section, each consumer who prevails may obtain:

(1) the amount of economic damages found by the trier of fact. If the trier of fact finds that the conduct of the defendant was committed knowingly, the consumer may also recover damages for mental anguish, as found by the trier of fact, and the trier of fact may award not more than three times the amount of economic damages; or if the trier of fact finds the conduct was committed intentionally, the consumer may recover damages for mental anguish, as found by the trier of fact, and the trier of fact may award not more than three times the amount of damages for mental anguish and economic damages;

(2) an order enjoining such acts or failure to act;

(3) orders necessary to restore to any party to the suit any money or property, real or personal, which may have been acquired in violation of this subchapter; and

(4) any other relief which the court deems proper, including the appointment of a receiver or the revocation of a license or certificate authorizing a person to engage in business in this state if the judgment has not been satisfied within three months of the date of the final judgment. The court may not revoke or suspend a license to do business in this state or appoint a receiver to take over the affairs of a person who has failed to

satisfy a judgment if the person is a licensee of or regulated by a state agency which has statutory authority to revoke or suspend a license or to appoint a receiver or trustee. Costs and fees of such receivership or other relief shall be assessed against the defendant.

(c) On a finding by the court that an action under this section was groundless in fact or law or brought in bad faith, or brought for the purpose of harassment, the court shall award to the defendant reasonable and necessary attorneys' fees and court costs.

(d) Each consumer who prevails shall be awarded court costs and reasonable and necessary attorneys' fees.

(e) In computing additional damages under Subsection (b), attorneys' fees, costs, and prejudgment interest may not be considered.

(f) A court may not award prejudgment interest applicable to:

(1) damages for future loss under this subchapter; or

(2) additional damages under Subsection (b).

(g) Chapter 41, Civil Practice and Remedies Code, does not apply to a cause of action brought under this subchapter.

(h) Notwithstanding any other provision of this subchapter, if a claimant is granted the right to bring a cause of action under this subchapter by another law, the claimant is not limited to recovery of economic damages only, but may recover any actual damages incurred by the claimant, without regard to whether the conduct of the defendant was committed intentionally. For the purpose of the recovery of damages for a cause of action described by this subsection only, a reference in this subchapter to economic damages means actual damages. In applying Subsection (b)(1) to an award of damages under this subsection, the trier of fact is authorized to award a total of not more than three times actual damages, in accordance with that subsection.

Added by Acts 1973, 63rd Leg., p. 322, ch. 143, Sec. 1, eff. May 21, 1973. Amended by Acts 1977, 65th Leg., p. 603, ch. 216, Sec. 5, eff. May 23, 1977; Acts 1979, 66th Leg., p. 1329, ch. 603, Sec. 4, eff. Aug. 27, 1979; Acts 1989, 71st Leg., ch. 380, Sec. 2, eff. Sept. 1, 1989; Acts 1995, 74th Leg., ch. 414, Sec. 5, eff. Sept. 1, 1995.

Amended by:

     Acts 2005, 79th Leg., Ch. 728 (H.B. 2018), Sec. 11.102, eff.
September 1, 2005.

ec. 5.021. INSTRUMENT OF CONVEYANCE. A conveyance of an estate of inheritance, a freehold, or an estate for more than one year, in land and tenements, must be in writing and must be subscribed and delivered by the conveyor or by the conveyor's agent authorized in writing.

Acts 1983, 68th Leg., p. 3481, ch. 576, Sec. 1, eff. Jan. 1, 1984.

(2)   the date of filing of any contest;

(3)   the date of any order on the contest; and

(4)   whether the contest was sustained or overruled;

(l)   whether the appellant has filed or will file a supersedeas bond; and

(m)  any other information the appellate court requires.

## 32.2.  Criminal Cases

Upon perfecting the appeal in a criminal case, the appellant must file in the appellate court a docketing statement that includes the following information:

(a)   (1)   if the appellant has counsel, the name of the appellant and the name, address, telephone number, fax number, if any, and State Bar of Texas identification number of the appellant's counsel, and whether the counsel is appointed or retained; or

(2)   if the appellant is not represented by an attorney, that party's name, address, telephone number, and fax number, if any;

(b)   the date the notice of appeal was filed in the trial court and, if mailed to the trial court clerk, the date of mailing;

(c)   the trial court's name and county, and the name of the judge who tried the case;

(d)   the date the trial court imposed or suspended sentence in open court, or the date the judgment or order appealed from was signed;

(e)   the date of filing any motion for new trial, motion in arrest of judgment, or any other filing that affects the time for perfecting the appeal;

(f)   the offense charged and the date of the offense;

(g)   the defendant's plea;

(h)   whether the trial was jury or nonjury;

(i)   the punishment assessed;

(j)   whether the appeal is from a pretrial order;

(k)   whether the appeal involves the validity of a statute, ordinance, or rule;

(l)   whether a reporter's record has been or will be requested, and whether the trial was electronically recorded;

(m)  the name of the court reporter;

(n)   (1)   the dates of filing of any motion and affidavit of indigence;

(2)   the date of any hearing;

(3)   the date of any order; and

(4)   whether the motion was granted or denied; and

(o)   any other information the appellate court requires.

## 32.3.  Supplemental Statements

Any party may file a statement supplementing or correcting the docketing statement.

## 32.4.  Purpose of Statement

The docketing statement is for administrative purposes and does not affect the appellate court's jurisdiction.

### Notes and Comments

Comment to 1997 change: The rule is new.

## Rule 33.  Preservation of Appellate Complaints

### 33.1.  Preservation; How Shown

(a)   *In General.* As a prerequisite to presenting a complaint for appellate review, the record must show that:

(1)   the complaint was made to the trial court by a timely request, objection, or motion that:

(A)  stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; and

(B)  complied with the requirements of the Texas Rules of Civil or Criminal Evidence or the Texas Rules of Civil or Appellate Procedure; and

(2)   the trial court:

parties in accordance with Rule 21a a "Notice of Past Due Findings of Fact and Conclusions of Law" which shall be immediately called to the attention of the court by the clerk. Such notice shall state the date the original request was filed and the date the findings and conclusions were due. Upon filing this notice, the time for the court to file findings of fact and conclusions of law is extended to forty days from the date the original request was filed.

## RULE 298. ADDITIONAL OR AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

After the court files original findings of fact and conclusions of law, any party may file with the clerk of the court a request for specified additional or amended findings or conclusions. The request for these findings shall be made within ten days after the filing of the original findings and conclusions by the court. Each request made pursuant to this rule shall be served on each party to the suit in accordance with Rule 21a.

The court shall file any additional or amended findings and conclusions that are appropriate within ten days after such request is filed, and cause a copy to be mailed to each party to the suit. No findings or conclusions shall be deemed or presumed by any failure of the court to make any additional findings or conclusions.

## RULE 299. OMITTED FINDINGS

When findings of fact are filed by the trial court they shall form the basis of the judgment upon all grounds of recovery and of defense embraced therein. The judgment may not be supported upon appeal by a presumed finding upon any ground of recovery or defense, no element of which has been included in the findings of fact; but when one or more elements thereof have been found by the trial court, omitted unrequested elements, when supported by evidence, will be supplied by presumption in support of the judgment. Refusal of the court to make a finding requested shall be reviewable on appeal.

## RULE 299a. FINDINGS OF FACT TO BE SEPARATELY FILED AND NOT RECITED IN A JUDGMENT

Findings of fact shall not be recited in a judgment. If there is a conflict between findings of fact recited in a judgment in violation of this rule and findings of fact made pursuant to Rules 297 and 298, the latter findings will control for appellate purposes. Findings of fact shall be filed with the clerk of the court as a document or documents separate and apart from the judgment.

### SECTION 11. TRIAL OF CAUSES

### H. Judgments

## RULE 300. COURT TO RENDER JUDGMENT

Where a special verdict is rendered, or the conclusions of fact found by the judge are separately

# RULE 103. RULINGS ON EVIDENCE

**(a) Effect of Erroneous Ruling.** Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

(1) *Objection.* In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context. When the court hears objections to offered evidence out of the presence of the jury and rules that such evidence be admitted, such objections shall be deemed to apply to such evidence when it is admitted before the jury without the necessity of repeating those objections.

# THE TEXAS DECEPTIVE TRADE PRACTICES ACT IN CONTEXT: NOT ALL THAT BAD

CONSUMER LAW BASICS – KNOW THE LAW!
PRESENTED BY:  THE CENTER FOR CONSUMER LAW
HOUSTON, TEXAS
FRIDAY, OCTOBER 23, 2009

© Richard M. Alderman
Associate Dean for Academic Affairs
Director, Center for Consumer Law
University of Houston Law Center
713-743-2165
alderman@uh.edu

# BIOGRAPHICAL INFORMATION

**RICHARD M. ALDERMAN**
**ASSOCIATE DEAN**
**DWIGHT OLDS CHAIR IN LAW**
**DIRECTOR, CENTER FOR CONSUMER LAW**
**UNIVERSITY OF HOUSTON LAW CENTER**
**(713) 743-2165**
**Alderman@uh.edu**

Richard M. Alderman grew up in upstate New York. He attended Tulane University and in 1968 was awarded a B.A. in psychology. Following graduation, he attended Syracuse University Law School where he was graduated first in his class and was awarded a Juris Doctorate degree. After a year practicing poverty law, he attended the University of Virginia Law School and was awarded a Masters of Law degree.

Dean Alderman has been a Professor at the University of Houston Law Center since 1973. During that time he has taught courses in Contracts, Commercial Law, Consumer Law, Deceptive Trade Practices Act and Sports Law. He also serves as the Director of the Center for Consumer Law, a community outreach arm of the Law Center. Professor Alderman is the author of more than twenty books and numerous articles. His most recent publications include **"Consumer Credit and the Law,"** and **"Consumer Protection and the Law,"** published by Thomson/West, **"The Lawyers Guide to the Texas Deceptive Trade Practices Act,"** published by Lexis Law Publishing and **"Texas Consumer Law: Cases and Materials,"** published by Imprimatur Press. He also authored **"Know Your Rights,"** 7th edition, and **"Your Texas Business,"** 2nd edition, for the layperson, published by Rowman and Littlefield Publishing. Professor Alderman serves as the Editor-in-Chief of "The Journal of Consumer and Commercial Law," the official publication of the Consumer and Commercial Law Section of the State Bar of Texas.

In addition to his duties at the Law Center, Dean Alderman appears regularly as the "People's Lawyer" on radio and television. He currently appears on KTRK-TV, Channel 13. From 1990 until 2006, he worked with the Texas Young Lawyers' Association on a program entitled "It's the Law" which was syndicated to TV stations in fourteen Texas cities. Dean Alderman has a weekly newspaper column in the Houston Chronicle that also runs in numerous other newspapers in the state of Texas. His work in educating the public has been recognized by the State Bar of Texas and the American Bar Association, which have twice awarded him their highest honors. He is often quoted in national publications, and has appeared on numerous television shows, including the "Oprah" show. A highlight of his career came in April 2000 when the Houston City Council and Mayor named April 15 "Richard M. Alderman Day" in honor of his work educating the public about their legal rights.

Dean Alderman's wife Janie runs her own graphic design business. They have one son, "Willie," born in 1991.

# THE TEXAS DECEPTIVE TRADE PRACTICES ACT IN CONTEXT: NOT THAT BAD

© Richard M. Alderman*

## I. INTRODUCTION

Prior to 1973, Texas consumer law could be summed up in two words, *caveat emptor*.[1] In 1973, however, the Texas Legislature enacted the Texas Deceptive Trade Practices—Consumer Protection Law.[2] The DTPA, as it soon became known, was quickly recognized as one of the foremost consumer protection statutes in the country. Its broad applicability, no-fault liability, and attractive remedial provisions, encourage attorneys to represent consumers. Courts at all levels followed the mandate of section 17.44 to liberally interpret the DTPA consistent with its stated purpose, which was to "protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection."[3] This mandate, coupled with the language of section 17.43 making it clear that the remedies provided by the DTPA are cumulative to any other procedures or remedies provided for in any other law,[4] resulted in an extremely favorable climate for plaintiffs and plaintiffs' attorneys.

But sometimes, too much of a good thing can turn bad. By the early 1990s, the DTPA had become a powerful tool, utilized successfully by consumer attorneys to combat nearly all forms of misrepresentation, deceit, and fraud in the marketplace. The DTPA was also successfully employed, however, in nearly all forms of civil litigation. Our state's "consumer protection statute" was the preferred basis for litigation involving

---

* Associate Dean, Dwight Olds Chair in Law and Director of the Center for Consumer Law, University of Houston Law Center, Alderman@uh.edu

[1] *See generally*, John Hill, *Introduction — Consumer Protection Symposium*, 8 St. Mary's L.J. 609 (1977).

[2] TEX. BUS. & COM. CODE §§17.41—63. Note that the Act has been amended nearly every legislative session since its enactment. For a comprehensive discussion of the DTPA, and all of the language of the amendments, see Richard M. Alderman, The Lawyer's Guide to the Texas Deceptive Trade Practices Act (2d ed. 2003).

[3] TEX. BUS. & COM. CODE §17.44. It is important to note that the mandate of section 17.44 was left unchanged by the 1995 amendments.

[4] Section 17.43 states:
> The provisions of this subchapter are not exclusive. The remedies provided in this subchapter are in addition to any other procedures or remedies provided for in any other law; provided, however, that no recovery shall be permitted under both this subchapter and another law of both damages and penalties for the same act or practice. A violation of a provision of law other than this subchapter is not in and of itself a violation of this subchapter. An act or practice that is a violation of a provision of law other than this subchapter may be made the basis of an action under this subchapter if the act or practice is proscribed by a provision of this subchapter or is declared by such other law to be actionable under this subchapter. The provisions of this subchapter do not in any way preclude other political subdivisions of this state from dealing with deceptive trade practices.

TEX. BUS. & COM. CODE § 17.43.

multi-million dollar commercial transactions,[5] personal injury arising out of an assault in an apartment complex,[6] professional malpractice,[7] and even the traditional slip and fall liability suit.[8] Actual damages often reached seven figures, additional damages were common, and attorneys' fees were mandatory.[9]

At the same time attorneys and courts were embracing the liberal provisions of the DTPA, the political climate in Texas was becoming much more conservative. Gradually, "tort reform" became the phrase of the day. The "tort reform" movement began in earnest in Texas in the mid-1980s.[10] By the end of the 1980s, Texas had enacted substantial changes in the law, and had even attempted to reduce the damages recoverable under the DTPA in non-traditional consumer cases.[11] But the real "reform" would come in 1995, when the Republican controlled legislature enacted a broad reform agenda that included wholesale amendments to the DTPA.[12] With the stated goal of "leveling the playing field," the legislature substantially amended the Act in an attempt to limit the amount of damages, preclude application of the DTPA to traditional tort suits, exempt certain large transactions, and make it easier for defendants to force a settlement and recover attorneys' fees for frivolous claims. The 1995 amendments clearly limited the scope of the DTPA and the amount of damages that may be recovered, and gave defendants additional opportunities to settle and a greater likelihood of recovering their attorneys' fees for defending a DTPA claim. The 2003 session of the legislature saw a second major round of "tort reform" legislation that, although not directly dealing with the DTPA, placed limits on recovery against certain defendants, particularly those in the residential construction business.[13]

---

[5] For example, in Prudential Ins. Co. of America v. Jefferson Associates, Ltd., 896 S.W.2d 156 (Tex. 1995) a sophisticated purchaser of commercial real estate sued the seller for damages in excess of $25 million.

[6] See, e.g., Berry Property management, Inc. v. Bliskey, 850 S.W.2d 644 (Tex. App.—Corpus Christi 1993) (suit by tenant who was sexually assaulted in apartment).

[7] See, e.g., Latham v. Castillo, 972 S.W.2d 66 (Tex. 1998) (suit against attorney based on unconscionable conduct).

[8] Most of these suits were found to be unsustainable under the DTPA. See, e.g., Rojas v. Wal-Mart Stores, Inc., 857 F. Supp. 533 (N.D. Tex. 1994).

[9] Section 17.50(d) of the Act mandates the award to attorneys' fees to a prevailing consumer.

[10] See generally Joseph Sanders and Craig Joyce, "Off to the Races: The 1980s Tort Crisis and the Law Reform Process, 27 HOUSTON L. REV. 207 (1990).

[11] In 1987, TEX. BUS. & COM. CODE § 17.50 was amended in an attempt to bring the DTPA in line with traditional torts claims. The result was a provision that actually increased damages under the DTPA by making certain DTPA suits subject to Chapter 41 of the Civil Practice and Remedies Code.

[12] The 1995 amendments to the DTPA may be found at Tex. H.B. 668, 74th Leg., R.S. (1995).

[13] See, Texas Residential Construction Commission Act, Ch. 401 TEX. PROP. CODE; and Residential Contractors' Liability Act, Ch. 27 TEX PROP. CODE. The Texas Residential Construction Commission Act, Title 16 of the Texas Property Code, was enacted in 2003. The TRCCA dealt with warranty law and the DTPA, and substantially impacted any claim involving a "builder." Section 401.006 of the Act, however, provided:

> The Texas Residential Construction Commission is subject to Chapter 325, Government Code (Texas Sunset Act). Unless continued in existence as provided by that chapter, the commission is abolished and this title expires September 1, 2009.

In 2009, the Texas Legislature failed to continue the Commission in existence, and therefore, all provisions included in Title 16 have now expired. Any suit filed after September 1, 2009, is no longer subject to this Act.

The goal of the reformers was to limit the applicability and effectiveness of the DTPA. No one can argue that they did not succeed. The extent of their success, however, is subject to debate. It is clear that the DTPA has been weakened. In absolute terms, the Act does not provide anywhere near the benefits it did for consumers. But an analysis in absolute terms is misleading. To truly evaluate the effectiveness of the DTPA as a tool for consumer attorneys, it must be measured in relative terms.

While the DTPA was being amended and its application limited by the courts and legislature, other available causes of action were being similarly reviewed, and reduced. Tort claims have been subject to even greater "reform" than the DTPA. Available defendants in tort and contract suits are reduced, damages are limited, comparative responsibility is strengthened, and punitive damages are sharply limited in both availability and amount. In contrast to claims based in tort or contract, the DTPA still provides a no-fault standard of recovery, the lowest causation standard, the most liberal standard for the award of exemplary damages, and mandatory attorneys' fees. In other words, relative to other available causes of action, the DTPA is still alive and well.

## II. APPLICABILITY: PROPER PARTY PLAINTIFF--CONSUMER

Perhaps the most significant event in the past decade of DTPA reform is a change that was not made. The definition of "consumer" has not been changed since the 1983 amendment,[14] which added the business consumer exception. Under section 17.45(4) a consumer is:

> an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services, except that the term does not include a business consumer that has assets of $25 million or more, or that is owned or controlled by a corporation or entity with assets of $25 million or more.[15]

In other words, the DTPA still applies to a broad range of individuals and businesses. It includes any individual purchasing any thing, as well as the vast majority of businesses buying for a business purpose. More significantly, because the definition has remained the same for 21 years, there is a large body of case law interpreting it and upon which attorneys can rely. To be a consumer, an entity must simply "seek or acquire, by purchase or lease, any goods or services."[16]

### 1. Requirements

Basically, to be a consumer, a qualified "entity"[17] must seek *or* acquire, by purchase *or* lease, goods *or* services. Note that there are three requirements that may be satisfied with alternatives in each category. For example, a consumer may seek by purchase goods; or, acquire by purchase services; or, acquire by purchase goods. Because of the significance of this definition (if you are not a consumer you may not use

---

[14] Tex. H.B. 883, 68th Leg., R.S. (1983).

[15] TEX. BUS. & COM. CODE §17.45(4)

[16] For a more comprehensive discussion of the term "consumer, " see RICHARD M. ALDERMAN, THE LAWYER'S GUIDE TO THE TEXAS DECEPITVE TRADE PRACTICES ACT, 2d ed., at Chapter 2.

[17] A qualified entity is an individual, partnership, corporation, this state, or a subdivision or agency of this state

the Act), it has been one of the most litigated sections of the Act. The focus of the litigation has been the meaning of the terms "seek or acquire," "purchase or lease," and "goods or services."

**a. Seek or Acquire**

Assuming that the party asserting a claim under the Act is an entity within the scope of the definition of consumer, the next question is did that entity "seek or acquire"? Note that it is only necessary that the entity claiming consumer status prove that it either sought or acquired. In most cases, it is simple to determine whether an entity has sought *or* acquired something. For example, if someone buys something he or she has acquired it. If someone is in the process of buying something, he or she is seeking it. There is no requirement, however, that there be contractual relationship, a contract, or payment. For example, in *Martin v. Lou Poliquin Enterprises, Inc.*,[18] Martin contacted a company to place an advertisement in the local yellow pages. The company failed to properly place the ad and violated the DTPA. The company defended by asserting that because Martin did not pay for its services, there was no consideration and, therefore, Martin was not a consumer. The court held that the DTPA does not require the transfer of consideration. An entity is a consumer if it seeks to purchase goods. The court found the test to be whether the consumer had a good faith intention to purchase, as well as the ability to purchase.[19]

As noted above, in most cases it is simple to determine if someone has acquired something. For example, anyone who buys something and takes possession of it has clearly "acquired" it. The courts, however, have held that a good may be "acquired" by someone who actually is not the owner of the good or has taken possession of it. The test is whether the objective of the transaction was to benefit the individual claiming consumer status. In *Wellborn v. Sears, Roebuck & Co.*,[20] a mother brought a DTPA claim on behalf of her deceased son. The claim was based on a defective garage-door opener, bought by the mother for her home. The court held that although there was no contractual relationship between the son and the seller, the son acquired the garage door opener and the benefits it provided. The son acquired the garage door opener when it was purchased for his benefit.[21]

To show that goods or services were purchased for someone else's benefit, and confer upon that person consumer status, it is necessary to show more than mere use of, or benefit from, the goods. The person claiming consumer status must be an "intended"

---

[18] 696 S.W.2d 180 (Tex. App.—Houston [14th Dist.] 1985).

[19] "A DTPA consumer is one who in good faith *initiates the purchasing process*. An individual initiates the purchasing process when he (1) presents himself to the seller as a willing buyer with the subjective *intent* or specific "objective" of purchasing, and (2) possesses at least some credible indicia of the *capacity* to consummate the transaction." *Id.* at 184-5.

[20] 970 F.2d 1420 (5th Cir. 1992).

[21] "Although Bobby did not enter into a contractual relationship with the defendants, he acquired the garage door opener and the benefits it provided. Wellborn did not purchase the garage door opener specifically for Bobby's benefit; nevertheless, Bobby lived with Wellborn and regularly used the garage door opener until the time of his death. Wellborn testified that one of the reasons that she bought the garage door opener was to provide additional security for Bobby on the nights that Bobby was home by himself. Indeed, Wellborn had instructed Bobby to lock the house up at night. Because Bobby acquired the garage door opener when it was purchased for his benefit, installed in his home, and used by him, we hold that, under the facts of this case, Bobby is a consumer." *Id.* at 1426-27.

rather than an "incidental" beneficiary. For example, a tenant may be a consumer with respect to services purchased by a landlord; an employee may be a consumer with respect to goods purchased by an employer; and a purchaser of property may be a consumer with respect to an inspection paid for by the seller. On the other hand, courts have found that a passenger riding in a car is not a consumer with respect to the car; a friend who borrows goods is not a consumer with respect to the goods; an employee who occasionally uses goods is not a consumer with respect to the goods; and a fiancé of a consumer is not a consumer with respect to goods purchased by the consumer.

**b. Purchase or Lease**
To be a consumer under the DTPA, an entity must do more than merely seek or acquire goods or services. The goods or services must be sought or acquired by "purchase or lease." An individual who receives services gratuitously is not a consumer for purposes of the Act. In *Exxon v. Dunn*,[22] the court held that the plaintiff was not a consumer with respect to services performed on his car because he was not charged for the services, and, therefore, they were not acquired by purchase. Other cases have held that free games of chance, promotional contests, and free legal services are not "purchased" for purposes of the DTPA.

Goods received as a "gift" or that are paid for by another may still, however, be acquired by purchase. This conclusion is based on the Texas Supreme Court holding in *Kennedy v. Sale*.[23] In *Kennedy*, an employee who acquired insurance paid for by the employer was held to be a "consumer" for purposes of the DTPA. The court made it clear that although a consumer must acquire goods or services by purchase, one other than the consumer may make the purchase. Thus courts have held that:

i)      a tenant is a consumer as to services purchased by the landlord;[24]
ii)     a child is a consumer with respect to services paid for by the parent;[25]
iii)    a person who receives legal services paid for by another is a consumer with respect to those services;[26]
iv)     a wife is a consumer with respect to services purchased by the husband;[27] and
v)      a purchaser is a consumer with respect to accounting services paid for by the seller.[28]

---

[22] 581 S.W.2d 500 (Tex. Civ. App.—Dallas 1979, no writ)

[23] 689 S.W.2d 890 (Tex. 1985).

[24] Kennedy v. Sale, 689 S.W.2d 890 (Tex. 1985). *See also* HOW Ins. Co. v. Patriot Fin. Serv., 786 S.W.2d 533 (Tex. App.—Austin 1990, writ denied) (condominium owner is consumer as to warrantor even though policy was purchased by builder); *See also* D/FW Commercial Roofing v. Mehra, 854 S.W.2d 182 (Tex. App.—Dallas 1993, no writ) (lessee who acquired roof paid for by lessor is consumer).

[25] Birchfield v. Texarkana Memorial Hosp., 747 S.W.2d 361 (Tex. 1987) (child is consumer with respect to medical services purchased by parents).

[26] Perez v. Kirk & Carrigan, 822 S.W.2d 261 (Tex. App—Corpus Christi 1991, writ denied) (person who acquires legal services paid for by another is a consumer).

[27] Parker v. Carnahan, 772 S.W.2d 151 (Tex. App.—Texarkana 1989, writ denied) (wife is consumer with respect to attorney's service purchased by husband).

[28] Arthur Anderson v. Perry Equip. Corp., 898 S.W.2d 914 (Tex. App.—Houston [1st Dist.] 1995), rev'd on other grounds, 945 S.W.2d 812 (Tex. 1997) (company that acquires accounting services paid for by another is a consumer).

Under the same analysis, a person who receives a gift is a consumer provided the gift giver purchases the gift.[29] In DTPA parlance, the person who received the gift has "acquired by purchase goods." The question to ask is: has the entity asserting consumer status either sought to purchase goods or services; or, has it acquired goods or services by a purchase?[30]

### c. Goods or Services

The final element in consumer status under the DTPA is that the purchase or lease be of "goods or services." Note that both of these terms are defined by the Act. "Goods" is defined to mean "tangible chattels or real property purchased or leased for use."[31] It is important to note that the definition of goods includes real estate. "Services" is defined to mean "work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods."[32]

In most cases it is not difficult to determine if something is a good. The term goods include every tangible thing, *including real estate* and living creatures. Perhaps the best way to discuss this term is to explain what is held to be excluded from the definitions. The term "goods" has been held to include everything except "intangibles."[33] Thus, the Act has been held not to apply to money, accounts receivable, stock, options contracts, certificates of deposit, the proceeds of an insurance policy, trademarks, a limited partnership interest, and a lottery ticket.[34]

Consistent with the mandate of section 17.44, the definition of the term services has been liberally interpreted by the courts to include repair or construction contracts,

---

[29] Precision Sheet Metal Mfg. Co., Inc. v. Yates, 794 S.W.2d 545 (Tex. App—Dallas 1990, writ denied) (plaintiff need not be the one who pays).

[30] Can a seller ever be a consumer? Although the answer appears to be "no," the facts of each case must be carefully evaluated to determine the true nature of the relationship. For example, in White v. Pilgrim's Pride Corp., 2008 U.S. Dist. LEXIS 74793 (E.D. Tex. 2008), chicken farmers sued the chicken processor and dealer under the DTPA. As the court noted, "The plaintiffs and PPC operate within a contractual relationship whereby PPC provides the plaintiffs with the chicks, feed, and supplies required to raise chickens In exchange, the plaintiffs care for the chickens until they reach maturity and are returned to PPC." Although the plaintiff's appear to be "selling" the service of raising the chickens to PPC, the court noted the contractual method payment and the true nature of the relationship. The court looked at the method used by PPC to calculate payments to the plaintiffs. The plaintiffs pointed out, "[t]he method used by PPC to calculate feed conversion payments to the plaintiffs at the time of the "settlement" to show that PPC deduct its costs from the value of the mature birds. Plaintiffs argue that in each transaction, PPC specifically identifies individual costs of feed, chicks and medication that the plaintiff has utilized in growing the broilers, in essence making the transaction a sale." Based on this relationship, the court concluded that the plaintiffs were in fact DTPA "consumers

[31] TEX. BUS. & COM. CODE §17.45(1)

[32] *Id.* at §17.45(2)

[33] United Postage Corp. v. Kammeyer, 581 S.W.2d 716, 721 (Tex. Civ. App.—Dallas 1979, no writ). *See also* Parr v. Tagco Indus., 620 S.W.2d 200, 206 (Tex. Civ. App.—Amarillo 1981, no writ) ("goods" includes "every species of property which is not real estate or a freehold").

[34] *See, e.g.,* Riverside Nat'l Bank v. Lewis, 603 S.W.2d 169, 174 (Tex. 1980); Snyders Smart Shop Inc. v. Santi, Inc., 590 S.W.2d 167, 170 (Tex. Civ. App.—Corpus Christi 1979, no writ); *In re* Sterling Foster & Co. (Price v. Sterling Foster & Co.), 222 F. Supp. 2d 289 (E.D.N.Y. 2002; Swenson v. Englestad, 626 F.2d 421, 428 (5th Cir. 1980); Hand v. Dean Witter Reynolds Inc., 889 S.W.2d 483 (Tex. App.—Houston [14th Dist.] 1994, writ denied); English v. Fisher, 660 S.W. 2d 521, 524 (Tex. 1983); Meineke Discount Muffler v. Jaynes, 999 F.2d 120 (5th Cir. 1993); Marshall v. Quinn-L Equities, Inc., 704 F. Supp. 1384, 1393 (N.D. Tex. 1988).

insurance contracts, and professional services, such as medical, legal, accounting, investment and architectural. The Texas Supreme Court, however, has held that money is not a good, and a person seeking to borrow money is not seeking a service.[35] Therefore, a person seeking to borrow, or merely borrowing money, is not a consumer under the Act. The purchaser of other banking services, however, may be a consumer. Banking services such as checking and savings accounts,[36] preparation of documents,[37] advice regarding certificates of deposit,[38] processing of title documents,[39] loan brokering,[40] and the sale of travelers' checks,[41] have all been held to give rise to consumer status.

When evaluating a transaction to determine whether it is subject to the DTPA, it must be evaluated from the consumer's perspective. For example, in *Flenniken v. Longview Bank & Trust Co.*,[42] the purchaser of a home sued the bank that provided financing for the builder. The bank, Longview, asserted that Flenniken was not a consumer because all that Longview did was loan money. The court held that from Flenniken's perspective there was only one transaction, the purchase of a house. The bank's financing of the transaction was merely Easterwood's means of making the sale. Flenniken was a consumer as to anyone who sought to enjoy the benefits of that transaction.[43] In other words, a loan transaction is subject to the DTPA if, viewed from the consumer's perspective; it is part of a transaction in goods or services.

Finally, note that goods or services must be purchased or leased "for use." Purchasing or leasing *for any purpose* including resale, satisfies this requirement. In *Big H Auto Auctions v. Saenz Motors*,[44] the court held that the ordinary meaning of "use" should be applied to the DTPA. Therefore, purchasing for any purpose is purchasing "for use."

---

[35] Riverside National Bank v. Lewis, 603 S.W.2d 169 (Tex. 1980).

[36] *See, e.g.*, Bank One, Texas v. Taylor, 970 F.2d 16 (5th Cir. 1992); Cushman v. Resolution Trust Co., 954 F.2d 317 (5th Cir. 1992); La Sara Grain Co. v. First Nat'l Bank of Mercedes, 673 S.W.2d 558, 564, 38 U.C.C. Rep. Serv. 963 (Tex. 1984); Farmers & Merchants State Bank of Krum v. Ferguson, 617 S.W.2d 918, 920 (Tex. 1981). *See also* Security Bank v. Dalton, 803 S.W.2d 443 (Tex. App. Fort Worth 1991, writ denied) ("appellees are consumers, both in connection with the various checking accounts and in connection with the extensions of credit"); Plaza Nat'l Bank v. Walker, 767 S.W.2d 276 (Tex. App. Beaumont 1989, writ denied) (savings account customer is consumer).

[37] *See, e.g.*, First Tex. Savs. Ass'n v. Stiff Properties, 685 S.W.2d 703, 705 (Tex. App. Corpus Christi 1984, no writ).

[38] *See, e.g.*, First Fed. Savs. & Loam Ass'n v. Ritenour, 704 S.W.2d 895, 900 (Tex. App.—Corpus Christi 1986, writ ref'd n.r.e.). See also McDade v. Texas Commerce Bank, 822 S.W.2d 713 (Tex. App.—Houston [1[st] Dist.] 1991, writ denied) (customer seeking to purchase bank's services as IRA trustee is consumer).

[39] *See, e.g.*, Juarez v. Bank of Austin, 659 S.W.2d 139, 142 (Tex. App.—Austin 1983, writ ref'd n.r.e.); McNiell v. McDavid Ins. Agency, 594 S.W.2d 198, 202 (Tex Civ. App.—Fort Worth 1980, no writ).

[40] *See, e.g.*, Fortner v. Fannin Bank in Windom, 634 S.W.2d 74, 76 (Tex. App.—Austin 1982, no writ).

[41] *See, e.g.*, Mercantile Mortgage Co. v. University Homes, Inc., 663 S.W.2d 45, 47 (Tex. App.—Houston [14[th] Dist.] 1983, no writ); Lubbock Mortgage & Inv. Co., Inc. v. Thomas, 626 S.W.2d 611, 613 (Tex App.—El Paso 1981, no writ).

[42] 661 S.W.2d 705 (Tex. 1983).

[43] "Privity between the plaintiff and defendant is not a consideration in deciding the plaintiff's status as a consumer under the DTPA . . . . A plaintiff establishes his standing as a consumer in terms of his relationship to a transaction, not by a contractual relationship with the defendant. The only requirement is that the goods or services sought or acquired by the consumer form the basis of his complaint." *Id.* at 707.

[44] 665 S.W.2d 756 (Tex. 1984).

### d. Business Consumer

Once an entity is a "consumer," it is within the scope of the Act. The DTPA, however, excludes certain business consumers from the definition. A "business consumer" with assets of $25 million or more, or one that is owned or controlled by a corporation or entity with assets of $25 million or more, is not a consumer for purposes of the DTPA. Business consumer is defined by section 17.45(10) to mean "an individual, partnership, or corporation who seeks or acquires by purchase or lease, any goods or services for commercial or business use. The term does not include this state or a subdivision or agency of this state. It is important to note that not all business consumers are excluded from the Act's definition, only those business consumers with the required assets. For example,

> X Corp. has assets of $5 million. It recently purchased a widget from Y Corp. In the course of the transaction, Y violated the DTPA. X Corp is a consumer. under the Act.

> Assume, however, that X Corp is a wholly owned subsidiary of Z Corp. Z Corp has assets in excess of $50 million. X Corp is not a consumer under the DTPA.

Note that an individual who seeks or acquires goods for personal use is a consumer regardless of the assets of the individual. For example, if Bill Gates buys an automobile for his family he is a consumer under the DTPA. Finally, it is important to note that the defendant has the burden to prove the business consumer exception as an affirmative defense.[45]

### 2. Statutory Exemptions

Perhaps the most publicized provisions in the 1995 amendments to the DTPA were those amending section 17.49, exempting certain transaction from the scope of the Act. After passage of the amendments, there was a widely held belief that the DTPA no longer applied to claims against professionals, claims rising out of a personal injury, and most large transactions. As you will see, the scope of the new exemptions to the Act were misunderstood, and widely exaggerated.

Prior to 1995, the exemption provisions of the DTPA were of little consequence. The Act did not apply to newspapers that published advertisements without knowledge of the false, misleading or deceptive nature of the publication; and, nothing in the Act applied to an act or practice authorized by specific rules or regulations of the Federal Trade Commission.[46] Many believed these exemptions sounded a death knell for the DTPA. In fact, they simply make clear that the DTPA does not apply to a transaction unless its provisions have been violated.

### a. Professional Services

Section 17.49(c) provides that nothing in the DTPA shall apply to "a claim for damages based on the rendering of a professional service, the essence of which is the

---

[45] Eckman v. Centennial Savings Bank, 784 S.W.2d 672 (Tex. 1990).
[46] See TEX. BUS. & COM. CODE §17.49(a)(b).

providing of advice, judgment, opinion, or similar professional skill."[47] Note that this section does not exempt all "professional services," rather it exempts only a service "the essence of which" is advice, judgment, opinion, or other professional skill. Thus, some professional services will be subject to the provisions of the Act, while others will not.[48] Additionally, because the focus of the exemption is the rendering of a service, not the occupation of the provider, a professional may render some services subject to the Act, while other services would be exempt. Two examples demonstrate this:

> Stuart is a real estate broker. Casey hires Stuart to obtain a property evaluation and sales recommendation regarding some property he intends to sell. Stuart prepares a report indicating the potential value of the property based on several different growth scenarios. The services provided by Stuart involved advice, judgment, and opinion.

> Stuart is also contacted by Carey. Carey hires Stuart to list his house with the listing service, to place advertisements for the sale and to show the home to potential purchasers. The essence of the service provided by Stuart is not advice, judgment or professional opinion.

Although most transactions will have to be individually evaluated to determined if their "essence" is advice, judgment or opinion, it is expected that most services provided by attorneys, physicians, and architects will be classified as "professional" within the scope of this exemption.

### a) Exceptions to the Exemption

Section 17.49(c) of the DTPA exempts certain professional services. The significance of this exemption is substantially reduced, however, by virtue of subsections 17.49(c) (1)-(4) which provide that "This exemption does not apply to:

> 1. an express misrepresentation of a material fact that cannot be characterized as advice, judgment, or opinion;
> 2. a failure to disclose information in violation of Section 17.46(b)(23);
> 3. an unconscionable action or course of action that cannot be characterized as advice, judgment, or opinion; or
> 4. breach of an express warranty that cannot be characterized as advice, judgment, or opinion.[49]

These "exceptions" to the exemption of section 17.49(c) substantially reduce the significance of the exemption. For example, an attorney who acts in an unconscionable manner is still subject to the DTPA.[50] Similarly, a physician who makes a misrepresentation of fact is not exempt from the Act.[51] Additionally, any claim based on

---

[47] TEX. BUS. & COM. CODE § 17.49(c).

[48] One way to view this exemption is that it is service specific, not profession specific. In other words, it is the nature of the service performed, not the person who performs it, that matters.

[49] TEX. BUS. & COM. CODE § 17.49(c)(1)-(4). *See, e.g.,* Head v. U.S. Inspect DFW, Inc., 159 S.W.3d 731 (Tex. App.—Fort Worth 2005).

[50] *See, e.g.,* Latham v. Castillo, 972 S.W.2d 66 (Tex. 1998) (Pre-1995 version of Act).

[51] *See* Sorokolit v. Rhodes, 889 S. W.2d 239 (Tex. 1994) (Pre-1995 version of Act). Note also that claims against health care providers are subject to the Medicial Liability and Insurance Improvement Act, which prohibits DTPA claims based on negligence. The applicability of the Medical Liability Improvement and

the failure to disclose is still a viable claim under the DTPA, even if the defendant is a professional.[52]

The DTPA professional services exemption is, in reality, very narrow, and does not constitute a significant change in the law.[53] A general malpractice claim, based entirely on a professional's failure to follow a reasonable standard of performance, is exempt from the scope of the DTPA. Claims based on a misrepresentation of fact, unconscionability, or failure to disclose, however, are still subject to the DTPA regardless of whether the actor is a professional.

## b. Personal Injury Claims.

DTPA § 17.49(e) states:

> *Except as specifically provided by Subsections (b) and (h), Section 17.50*, nothing in this subchapter shall apply to a cause of action for bodily injury or death or the infliction of mental anguish.

Although some have suggested that this provision exempts all claims involving personal injury from the DTPA, this clearly is not the case. A plain reading of this provision makes it clear that a claim for personal injury is within the scope of the DTPA, as long as it is within the provisions of section 17.50(b) or (h). In other words, only those claims that are outside of section 17.50(b) and (h) are exempt from the Act. In light of the fact

---

Insurance Act is frequently litigated in the context of a DTPA claim. In Scientific Image Center Management, Inc. v. Brewer, 282 S.W.3d 233 (Tex. App. Dallas 2009, pet. filed), the court noted that the MLIIA applies to "health-care" claims, that is a claim based on treatment, lack of treatment, or other departure form accepted standards of medical care. The court noted:

> The Texas Supreme Court repeatedly has held that plaintiffs cannot, through artful pleading, avoid the strictures now codified in chapter 74 by recasting health care liability claims as other causes of action. See Diversicare Gen. Partner, Inc. v. Rubio, 185 S.W.3d 842, 845 (Tex. 2005) (patient's claim for sexual assault by another patient caused by nursing home's negligence in failing to provide adequate supervision and nursing services was health care liability claim); Murphy v. Russell, 167 S.W.3d 835, 839 (Tex. 2005) (claims doctor sedated patient after expressly representing and warranting he would not, could not be recast as DTPA action); Garland Community Hosp. v. Rose, 156 S.W.3d 541, 546 (Tex. 2004) (negligent credentialing claims centered on the quality of doctor's treatment were inextricably intertwined with the patient's medical treatment); Earle v. Ratliff, 998 S.W.2d 882 (Tex. 1999) (alleged representations concerning back surgeries related to treatment and surgeries performed and were not DTPA claims); Walden v. Jeffery, 907 S.W.2d 446, 447-48 (Tex. 1995) (dentist's failure to provide dentures that fit was a negligence claim, not DTPA claim); MacGregor Med. Ass'n v. Campbell, 985 S.W.2d 38, 40-41 (Tex. 1995) (clinic's statements in literature that it provided qualified personnel and resources, the best services possible, and emergency service twenty-four hours a day were not actionable under the DTPA when the complaint was negligent treatment); Gormley v. Stover, 907 S.W.2d 448, 449-50 (Tex. 1995) (per curiam) (dentist's statements he could perform surgery with no problems, that skin graft would work as well as bone graft, that after surgery patient could wear dentures with no problems, and that patient's pain and numbness would subside following surgery, could not be recast as DTPA action). *But see* Sorokolit v. Rhodes, 889 S.W.2d 239, 242-43 (Tex. 1994) (a physician's promise that his patient's appearance following cosmetic surgery would be identical to a specific photograph was actionable under the DTPA).

[52] *See* generally, TEX. BUS. & COM. CODE §17.46(b)(24).

[53] Even before the 1995 amendments, courts recognized that a negligence claim could not be turned into a DTPA claim simply by re-classifying it.

that sections 17.50(b) and (h) are the only remedial provisions in the DTPA, it is difficult to see what this exemption really applies to. In fact, the exemption serves just one important purpose. The exemption makes it clear that recoverable damages arising out of a personal injury claim are limited to those specifically authorized by the language of the Act.

Subsection 17.50(b), discussed below, is the general damage provision of the Act. Subsection 17.50(h), discussed below, is the damage provision for "tie-in statutes." Together, these provisions allow for the recovery of most damages arising from a personal injury. For example:

> Jane brought her car into Bob's repair shop to have the breaks repaired. Bob improperly repaired the brakes, violating the DTPA. As a result, the car crashed, destroying the car and injuring Jane. Jane brought a claim under the DTPA seeking damages for the value of the car, reimbursement of medical bills, pain and suffering, mental anguish and loss of consortium. Under section 17.50(b) she may recover her "economic loss," including the value of the car and her medical expenses, excluding pain and suffering and loss of consortium. She also may recover mental anguish damages if she establishes that Bob's acted "knowingly."

> Pat went to a health club. The health club, in violation of the Health Spa Act, misrepresented the services it would provide and the nature of its program. As a result, Pat was injured using the equipment. He filed suit under the DTPA for violation of the Health Spa Act, a "tie-in" statute. He sought damages for medical expenses, pain and suffering, mental anguish, and loss of consortium. He is entitled to recover his "actual damages" including all elements of damages alleged.

### c. Large Transactions

The DTPA also exempts certain large transactions from the scope of the Act. Section 17.49 provides two "large transaction" exemptions; one for transactions over $100,000 and another for those in excess of $500,000.

Under section 17.49(f), certain transactions in excess of $100,000 are not subject to the Act. The DTPA does not apply to a claim arising out of a *written contract* if the contract relates to a "transaction, project, or set of transactions related to the same project" involving consideration by the consumer of more than $100,000.[54] This

---

[54] Tex. Bus. & Com. Code § 17.49(f)(1). *See, e.g.*, Citizens Nat'l Bank v. Allen Rae Invs., Inc., 142 S.W.3d 459 (Tex. App. Fort Worth 2004, no pet. h.) Although both subsections (g) and (f) require the court to determine the "amount" of consideration, there is no requirement that the amount be determined from the face of the contract. For example, in In re Frazin, 2009 Bankr. LEXIS 2373 (Bankr. N.D. 2009), the defendant argued that its contingency fee contract with the consumer was in an amount over $100,000. The consumer, on the other hand, argued that the contract on its face did not indicate an amount in excess of the statutory floor. The court concluded that:

> Frazin's argument takes the statute beyond its logical conclusion. The fact that a contract for legal services may not quantify the value of those services in the contract itself does not mean that they should be quantified for DTPA purposes at less than $100,000 (such that the Section 17.49(f)

exemption for claims arising out of a written contract requires that the consideration must be more than $100,000. Note, however, that it does not require one transaction. The exemption applies to a transaction, project, or set of transactions, as well. For example, the purchase of property for $50,000 and improvements for $75,000 would be sufficient to invoke this exemption. Note, however, that this exception applies only if the consumer is represented by an attorney and if the attorney who represents the consumer is not directly or indirectly identified, suggested, or selected by the defendant or an agent of the defendant.[55]

Significantly, the exemption of section 17.49(f) does not apply to a transaction involving the consumer's residence.[56] Residence is defined by section 17.45(12) to mean a building

(A) that is a single-family house, duplex, triplex, or quadruplex or
a unit in a multiunit residential structure in which title to the
individual units is transferred to the owners under a condominium or
cooperative system; and
(B) that is occupied or to be occupied as the consumer's residence.

Section 17.49(g) provides a second exemption for large transactions. The DTPA does not apply to a cause of action arising out of a transaction, a project, or a set of transactions relating to the same project, involving a total consideration by the consumer of more than $500,000.[57] Note that although the total consideration paid by the consumer must be in excess of $500,000, there is no requirement there be just a single transaction. For purposes of determining the total consideration it is necessary to look at "a transaction, project, or set of transactions." For example, if a developer purchases property with intent to develop it for $300,000, and then spends $300,000 improving it, all claims arising out of the project would be exempt.[58] As with the $100,000 exemption, this exception does not apply to a transaction involving the consumer's residence.[59]

## III. PROPER PARTY DEFENDANT: WHO MAY BE SUED

In addition to qualifying as a consumer, the courts have recognized that to maintain a claim under the Act the "goods or services" purchased must "form the basis of the consumer's complaint."[60] There is, however, no requirement of privity under the Act.

---

exemption won't apply) instead of being quantified at more that $100,000 (such that the Section 17.49(f) exemption will apply) -- it simply means that quantification for DTPA purposes must be done by looking at something other than the monetary value as stated in the parties' contract.

[55] *Id.* at §17.49(f)(2).
[56] *Id.* at § 17.49(f)(3).
[57] *Id.* at §17.49(g).
[58] It may be possible to avoid the application of this exemption through the use of separate business entities, each being a separate consumer. For example, if one entity purchased the land, and another developed the property, there would be two separate consumers and the total consideration paid for by "the" consumer would not include funds expanded by the other entity.
[59] TEX. BUS. & COM. CODE §17.49(g).
[60] "We have also recognized at least two requirements that must be established for a person to qualify as a consumer under the DTPA. One requirement is that the person must have sought or acquired goods or

In *Cameron v. Terrell & Garrett, Inc.,*[61] the court held that there is nothing in the Act that limits its application only to deceptive trade practices committed by persons who furnish goods or services on which the complaint is based. The court stated:

> Consumer is defined in section 17.45(4) only in terms of a person's relationship to a transaction in goods or services. It does not purport to define a consumer in terms of a person's relationship to the party he is suing. Section 17.45(4) does nothing more than describe the class of persons who can bring a suit for treble damages under section 17.50. It does not say who a consumer can sue under section 17.50 for a deceptive trade practice violation. With respect to whom a consumer can sue, section 17.50(a)(1), the subsection under which this suit was tried, expressly states that a consumer can bring a suit if he has been adversely affected by "the use or employment by any person of an act or practice declared to be unlawful in section 17.46." Terrell & Garrett is a person under the Act. We, therefore, hold that a person need not seek or acquire goods or services furnished by the defendant to be a consumer as defined in the DTPA.[62]

In other words, under the language of the DTPA, once an entity is a consumer, a claim may be brought against any person, regardless of that person's relationship with the transaction, and notwithstanding the lack of privity.[63] This rule of broad applicability was substantially modified, however, by the court's decision in *Amstadt v. U.S. Brass.*[64]

As discussed above, under *Cameron,* once consumer status is established, all the consumer must do to maintain a cause of action against a particular defendant is show that the goods or services form the basis of his complaint and that the defendant violated the Act. In *Amstadt,* however, the court noted that although the defendant does not have to be in privity with the consumer, the defendant's wrongful conduct must be committed "in connection with" the consumer's transaction.

> Although the DTPA was designed to supplement common-law causes of action, we are not persuaded that the Legislature intended the DTPA to reach upstream manufacturers and suppliers when their misrepresentations are not communicated

---

services by purchase or lease. Another requirement recognized by this Court is that the goods or services purchased or leased must form the basis of the complaint. If either requirement is lacking, the person aggrieved by a deceptive act or practice must look to the common law or some other statutory provision for redress."
Cameron v. Terrell & Garrett, Inc., 618 S.W.2d 535, 539 (1981).

[61] 618 S.W.2d 535 (Tex. 1981).
[62] *Id.* at 541.
> We find no indication in the definition of consumer in section 17.45(4), or any other provision of the Act, that the legislature intended to restrict its application only to deceptive trade practices committed by persons who furnish the goods or services on which the complaint is based. Nor do we find any indication that the legislature intended to restrict its application by any other similar privity requirement. In contrast, privity requirements have been dispensed with altogether in negligence suits, in implied warranty suits for economic loss, and, for the most part, privity requirements have also been abolished in strict liability suits. The Act is designed to protect consumers from any deceptive trade practice made in connection with the purchase or lease of any goods or services. To this end, we must give the Act, under the rule of liberal construction, its most comprehensive application possible without doing any violence to its terms.
*Id.* at 540-41.
[64] 919 S.W.2d 644 (Tex. 1996).

to the consumer. Despite its broad, overlapping prohibitions, we must keep in mind why the Legislature created this simple, non-technical cause of action: to protect consumers in consumer transactions. Consistent with that intent, we hold that the defendant's deceptive conduct must occur in connection with a consumer transaction, as we explain below.[65]

The "in connection with" language of *Amstadt* has not been discussed nor applied much since the decision, and the decision itself does not provide a great deal of insight into exactly what it means.[66] It is clear, however, that DTPA suits against a party with whom the consumer did not directly deal, such as a remote manufacturer, will be subject to an additional test. Did the defendant's conduct occur "in connection with" the consumer's transaction?[67] For example, in a misrepresentation claim under the DTPA, the misrepresentation probably must reach the consumer for a DTPA claim to lie.

A consumer may sue anyone who violates the Act, regardless of whether there is any privity between the consumer and the defendant. A consumer, however, may not maintain a DTPA action against an individual that does not have a direct involvement in the transaction that forms the basis of the consumer's complaint, unless the consumer shows that the act or practice complained of occurred "in connections with" the consumer's transaction.

## IV. CLAIMS UNDER THE ACT

Section 17.50(a) of the DTPA provides that a consumer may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish:

(1) The use or employment by any person of a false, misleading, or deceptive act or practice that is:

(A) specifically enumerated in a subdivision of Subsection 17.46 of this subchapter; and

(B) relied on by a consumer to the consumer's detriment;

---

[65] *Id.* at 649.

[66] In its opinion, the court states what is not "in connection with," rather than what is. For example, as to one of the parties the court noted:

Although the conduct of U.S. Brass comes closer to being in connection with the plaintiffs' purchase of their homes than the conduct of Shell or Celanese, it also falls short of meeting the nexus required for DTPA liability. U.S. Brass exercised significant control over the design and installation of the plumbing systems, but as with Shell and Celanese, U.S. Brass had no role in the sale of the homes to the plaintiffs. As with Shell, U.S. Brass' marketing efforts were not intended to, nor were they, incorporated into the marketing of the homes to the plaintiffs. Finally, U.S. Brass' products were subject to independent evaluation by building code officials, homebuilders, and the plumbing contractors who installed the materials. Viewed in this context, we conclude that U.S. Brass' actions were not connected with the plaintiffs' transactions, that is, the sale of the homes, in a way that justifies liability under the DTPA. *Id.* at 652.

[67] *See, e.g.,* Norwest Mortgage, Inc. v. Salinas, 999 S.W.2d 846 (Tex. App. Corpus Christi 1999, no pet.) wherein the court finds the Amstadt test to be satisfied; and, Marshall v. Husch, 84 S.W.3d 781 (Tex. App. Dallas 2002, no pet. h.), wherein the court notes that Amstadt requires that the representation reach the consumer, or that there be a benefit from the consumer's transaction to the party making the misrepresentation. Richard M. Alderman, THE LAWYER'S GUIDE TO THE TEXAS DECEPTIVE TRADE PRACTICES Act § 3.022 at note 32 (2$^d$ ed. 2003).

(2) breach of an express or implied warranty;

(3) any unconscionable action or course of action by any person; or

(4) the use or employment by any person of an act or practice in violation of Chapter 541, Insurance Code.

It is important to note that there are four separate, yet cumulative, claims under section 17.50(a). Conduct may violate one or all of the four provisions. For example, a party may act in a manner that gives rise to a misrepresentation, a breach of warranty and be unconscionable. Consider the following example:

> Carey brought her car into Bob's for repairs. Carey knew nothing about automobile engines and relied entirely on Bob's expertise. Bob, knowing that he had a "sucker" told Carey that she needed a complete engine overhaul, a statement that was untrue. He then performed a minor engine repair. The repair, however, was done improperly. Based on this conduct, Carey could establish a laundry list violation, a breach of the warranty of good and workmanlike performance, and unconscionability.

## 1. The Laundry List

Section 17.46(b) includes a list of twenty-seven acts or practices that are deemed to be false, deceptive, or misleading under the Act.[68] This list is generally referred to as "the laundry list." Each of these acts or practices is actionable under the DTPA. Note that the Act requires that in addition to establishing the act or practice, the consumer must show that the act was "relied on by *a* consumer to *the* consumer's detriment."[69] In most cases reliance will be by the consumer who is maintaining the action. For example, relying on a seller's misrepresentation, the consumer purchased the goods that form the basis of the complaint. It is not necessary, however, that the reliance always be by the consumer who filed the suit. In many cases, a purchase is made by someone other than the ultimate consumer. For example, a husband, in reliance on a salesperson's misrepresentation, may purchase a gift for his wife, or a father may rely on the manufacturer's advertisement when purchasing a product for his son. In such cases, there are two consumers: the purchaser as well as the party who receives the goods through the purchase. By using the words "a" consumer and "the" consumer, section 17.50(a) reaches the logical conclusion that reliance by "a" consumer is sufficient ton give consumer standing to "the" consumer who is ultimately injury or stuck with the defective product. For example, in the above hypothetical, the husband's reliance would be sufficient to enable wife to maintain a claim under the DTPA, as would father's reliance for the son.[70]

Most of the laundry list provisions are self-explanatory. If any of the above provisions has been found to happen, it is by law an unlawful event actionable under the DTPA. Violations of the laundry list are actionable without regard to privity and may occur prior to, simultaneously with, or after a contract has been formed. It is also significant to note that knowledge or intent is not an element of a laundry list violation,

---

[68] TEX BUS. & COM. CODE § 17.46(b).

[69] This requirement was added by the 1995 amendments. A similar requirement of reliance had been imposed by the supreme court in Prudential Ins. Co. of America v. Jefferson Assocs. Ltd., 896 S.W.2d 156 (Tex. 1995). An interesting issue is the continued validity of Prudential in light of these changes.

[70] Requiring actual reliance by the consumer maintaining the claim would often result in the inequitable situation of allowing a merchant to misrepresent goods or services with no liability based simply on the fact that the goods were purchased for another.

unless required by the particular subdivision.[71] This is a substantial change from common law fraud. For example, in *Pennington v. Singleton*, [72] Singleton sold his boat to Pennington. Singleton had never sold a boat before and was not in the business of selling boats. Singleton made oral statements to Pennington that the boat and motor had just had $500 worth of work and was in "excellent condition," "perfect condition," and "just like new." These statements were made as statements of fact. The statements were false because the mechanic had not adequately repaired the motor. Singleton did not know the statements were false, did not intend to mislead Pennington, and acted in good faith. The court found that Singleton violated subsection 17.46(b)(5) and (7). These subsections do not require proof of knowledge or intent.[73]

**a. General Misrepresentations**

Although the laundry list consists of twenty-five provisions, most reported decisions are based on just four, subsection (5), (7), (12), and (23). This is because these are the most general provisions, and the easiest to establish. Basically, subsections (5) and (7) apply to any misrepresentation regarding goods or services, subsection (12) applies to any misrepresentation regarding agreements or legal rights and remedies, and subsection (23) applies to the failure to disclose. Note that subsection (23) is one of the provisions of the laundry list that require proof of intent.

To constitute a violation of subsection (5) or (7), it is only necessary that the actor make a representation of fact regarding goods or services that is inaccurate or false. Statements may be oral or written. Note, however, that it must be a statement of fact and not merely opinion. Statements that constitute mere opinion, puffing, or vague generalizations, are not actionable under the DTPA.[74] Misrepresentations are actionable under the DTPA regardless of the intent of the party making the representation or his or her knowledge of the falsity.[75] Here are some examples of conduct that has been found to violate subsection (5) or (7):

1. Misrepresentation regarding coverage of title insurance policy.[76]
2. Misrepresentation that property "properly drained."[77]
3. Implied misrepresentation that services had been performed.[78]
4. Oral misrepresentation that house complied with housing code.[79]
5. Doctor's misrepresentation regarding benefits of drug.[80]
6. Builder's misrepresentation regarding quality of house.[81]
7. Car dealer's misrepresentation regarding rebate.[82]

As noted above, oral representations may form the basis of a DTPA claim under the laundry list. The parol evidence rule and the statute of frauds, prohibiting the

---

[71] TEX BUS. & COM. CODE §§ 17.54(b)(10), (13), (23).

[72] 606 S.W.2d 682 (Tex. 1980).

[73] *Id*. at 687.

[74] *Id*.

[75] *See, e.g.*, Pennington v. Singleton, 606 S.W.2d 682 (Tex. 1980).

[76] *See, e.g.*, First Title Co. of Waco v. Garrett, 860 S.W.2d 74 (Tex 1993).

[77] *See, e.g.*, Kessler v. Fanning, 953 S.W.2d 515 (Tex. App.—Fort Worth 1997).

[78] *See, e.g.*, Orkin v. LeSassier, 688 S.W.2d 651 (Tex. App. — Beaumont 1995).

[79] *See, e.g.*, Weitzel v. Barnes, 691 S.W.2d 598 (Tex. 1985).

[80] *See, e.g.*, State v. Bachynsky, 770 S.W.2d 563 (Tex. 1989).

[81] *See, e.g.*, Smith v. Baldwin, 611 S.W.2d 611 (Tex. 1980).

[82] *See, e.g.*, Gunn Buick v. Rosano, 907 S.W.2d 628 (Tex. App.—San Antonio 1995).

introduction of oral statements when a written agreement exists, do not apply to DTPA misrepresentations, even if the subject matter is land.[83]

## b. Misrepresentations Regarding Legal Rights

There is a violation of the laundry list whenever a seller of goods or services misrepresents the nature of the agreement or the rights and remedies available under an agreement.[84] This provision, however, does not turn all breach of contract actions into DTPA claims. A statement that is merely an interpretation of a contract that subsequently proves to be incorrect is not a violation of this subsection.[85] Here are some examples of conduct that has been found to violate subsection (b)(12):

(i) Misrepresentation that layaway agreement gave seller the right to retain all monies deposited by buyer.[86]

(ii) Landlord's misrepresentation of right to enter and take equipment.[87]

(iii) Misrepresentation regarding right to repossess.[88]

(iv) Implicit misrepresentation regarding legal right to tow car from condominium complex.[89]

## c. Failure to Disclose

In addition to imposing liability based on affirmative misrepresentations, the DTPA recognizes that silence may also be false, deceptive or misleading.[90] Subsection

---

[83] *See, e.g.,* Weitzel v. Barnes, 691 S.W.2d 598 (Tex. 1985)

[84] TEX BUS. & COM. CODE §17.46(b)(12).

[85] *Id.*

[86] *See, e.g.,* Leal v. Furniture Barn, 571 S.W.2d 864 (Tex. 1978).

[87] *See, e.g.,* Myers v. Ginsberg, 735 S.W.2d 600 (Tex. App. — Dallas 1987).

[88] *See, e.g.,* Villarreal v. Elizondo, 831 S.W.2d 474 (Tex. App. — Corpus Christi 1992).

[89] *See, e.g.,* River Oaks Townhomes Owner's Association v. Bunt, 712 S.W.2d 529 (Tex. App.—Houston [14th Dist.] 1986).

[90] In addition to the DTPA disclosure requirement, a seller of residential real estate is also required to disclose, in writing, certain facts about his or her knowledge of the condition of the property. Section 5.008(b) of the Property Code establishes minimum disclosures that must be made, and requires that the disclosures be made in a form "substantially similar" to the statutory model.

The remedy for a violation of the disclosure requirement, however, is somewhat limited. Section 5.008(f) provides:

The notice shall be delivered by the seller to the purchaser on or before the effective date of an executory contract binding the purchaser to purchase the property. If a contract is entered without the seller providing the notice required by this section, the purchaser may terminate the contract for any reason within seven days after receiving the notice.

In other words, the buyer's sole remedy is to terminate the contract. No provision is made for the consumer to retain the property and recover damages. For this reason, Section 5.008 should always be considered in conjunction with the DTPA. The failure to disclose under 5.008, or, an inaccurate disclosure, will often be actionable under the laundry list provisions of the DTPA. For example, in Robertson v. Odom, 2009 Tex. App. LEXIS 5960 (Tex. App. Houston [14th Dist.] 2009, no pet. h.) the court considered whether representing that there were no "structural repairs" violated the DTPA, when in fact a substantial amount of work had been done on the property and a large amount of sheet rock had been replaced. To determine the meaning of "structural repairs," the court looked to section 5.008, which requires that all structural repairs be disclosed. Reviewing analogous case law, the court found that "structural" means referring to "the load-bearing portion of a residence." Although this decision may correct in the context of the Property Code, it may not be the correct approach for a DTPA misrepresentation. For purposes of the DTPA, the court should have looked at how the reasonable consumer would have understood the phrase.

(24) makes the failure to disclose actionable under the Act, however, it adds a requirement that the defendant intend that his or her silence induce the consumer into the transaction.

To establish a claim under section 17.46(b)(23) the consumer must establish four elements:

(i) the defendant knew information regarding the goods or services;

(ii) the information was not disclosed;

(iii) there was an intent to induce the consumer to enter into the transaction; and

(iv) the consumer would not have entered into the transaction on the same terms had the information been disclosed.

The first element should be an obvious requirement. A party cannot be held responsible for failing to disclose that which he or she does not know.[91] The second and third requirements should be considered together. There must be a failure to disclose and it must be with the intent to induce the consumer into the transaction. A presumption of intent should arise whenever it is shown that the information was material. At that point the burden should shift to the defendant to establish why the information was not disclosed.

Finally, the consumer must establish that he or she would not have entered into the transaction, or would not have entered into it on the same terms had the information been disclosed. Note that a seller has no obligation to disclose what the consumer already knows. For example, if the consumer knows that a foundation is defective, there can be no liability upon the seller for failing to disclose this fact. Notice, however, must be actual notice. Constructive notice, for example that provided by filing statutes, is not sufficient to relieve a defendant of its obligation to disclose.[92]

## 2. Unconscionability

Under section 17.50(a), a consumer may maintain a claim for any unconscionable act or practice. For purposes of the DTPA, unconscionability is defined as "an act or practice, which to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree."[93] Although the 1995 amendments substantially limited the definition of unconscionability by deleting subsection (B), permitting pure "price unconscionability," this provision still provides relief for those situations where a consumer of limited education, sophistication, experience, or ability, is taken advantage of.

Whether an act or practice is unconscionable is determined at the time of the sale or contract.[94] The process of establishing unconscionability involves reviewing the facts

---

The Texas Real Estate Commission has promulgated forms that comply with section 5.008, which are used in most Texas real estate transactions. The TREC Standard Forms may be purchased from the Commission or may be printed from the TREC website on the Internet at www.trec.state.tx.us. The Commission may be contacted by mail at P.O. Box 12188, Austin, Texas, 78711-2188 or by telephone at (800) 250-8732.

[91] *See, e.g.,* Chandler v. Gene Messer Ford, Inc., 81 S.W.3d 493 (Tex. App. Eastland 2002, no pet)

[92] *See, e.g.,* Ojeda de Toca v. Wise, 748 S.W.2d 449 (Tex. 1988).

[93] TEX BUS. & COM. CODE §17.45(5). Note that until 1995 the definition of unconscionability included a subsection (B), defining unconscionability to mean charging a price grossly in excess of value received. When reading unconscionability cases be sure to determine which definition the court is employing.

[94] *See, e.g.,* Parkway Corporation v. Woodruff, 901 S.W.2d 434 (Tex. 1995).

of the case, in light of the education, experience and ability of the consumer. Whether an act or practice takes advantage to a grossly unfair degree is based on an objective review of the facts. The consumer is not required to show that the defendant acted with any form of culpable mental state, such as acting intentionally, knowingly, or with conscious indifference.[95] To be unconscionable an act or practice simply must take advantage of the consumer's lack of knowledge, ability, experience, or capacity to a "grossly" unfair degree. The supreme court has defined "grossly" to mean "glaringly noticeable, flagrant, complete, and unmitigated.[96]

Unconscionability under the DTPA requires that the consumer establish two elements. First, there must be a showing of a lack of knowledge, ability, experience, or capacity on the part of the consumer. Second, the consumer must establish that the defendant took advantage of this lack to a grossly unfair degree. As noted above, there is no need to show any knowledge, intent, or ill motive on the part of the defendant. In other words, whether the defendant acted intentionally or innocently is of no relevance with respect to a determination of unconscionability.

### 3. Breach of Warranty

The DTPA is both an independent basis for a cause of action and a vehicle through which to bring an otherwise existing claim. Subsection 17.50(a)(2) makes this clear by providing that a consumer may maintain an action under the DTPA for any breach of warranty.[97] Thus, warranty law in Texas takes on an added dimension — the enhanced damages provided by the DTPA.[98]

Section 17.50(a)(2) provides that a consumer may maintain an action under the Act for breach of an express or implied warranty. Unlike the laundry list and unconscionability, however, the DTPA does not define or establish any warranties. All it does is provide a vehicle through which a breach of warranty claim may be brought. To establish the warranty, law outside of the DTPA must be consulted.[99]

Warranties may be express or implied, and may arise by statute or common law. For example, the Texas Business and Commerce Code creates express and implied warranties in the sale of goods,[100] and the Texas Supreme Court has created an implied

---

[95] *See, e.g.*, Chastain v. Koonce, 700 S.W.2d 579 (Tex. 1985).

[96] *Id.* at 583.

[97] For a complete discussion of Texas warranty law, see RICHARD M. ALDERMAN, THE LAWYER'S GUIDE TO THE TEXAS DECEPITVE TRADE PRACTICES ACT, 2nd ed. at Chapter 5.

[98] Under the DTPA, damages may be enhanced and additional, or punitive, damages may be recovered in situations where they would not otherwise be authorized. For example, under Chapter 2 of the Texas Business and Commerce Code, damages for mental anguish and punitive damages may not be recovered. If the claim is pled through the DTPA, however, these damages may be recovered if the defendant acted "knowingly." *See* TEX BUS & COM CODE §17.50(b).

[99] *See* La Sara Grain Company v. First National Bank of Mercedes, 673 S.W.2d 558 (Tex. 1984). The importance of the rule that the DTPA does not establish any warranties was clearly demonstrated in Pavelka v. Foxworth-Galbraith Lumber Co., 2008 Tex. App. LEXIS 6008 (Tex. App. Waco 2008, pet. denied), where in the court reversed and remanded a decision based on inconsistent jury answers to questions about warranty and DTPA warranty. *See also* Para-Chem Southern, Inc. v. Sandstone Products, Inc., 2009 Tex. App. LEXIS 801 (Tex. App. Houston [1st Dist.] 2009, pet. denied) (successful challenge to warranty claims also defeats DTPA claims based on breach of warranty).

[100] *See* TEX. BUS. & COM. CODE §§2.312-314.

warranty of good and workmanlike performance in service contracts,[101] suitability in commercial leases,[102] and good and workmanlike performance and habitability in the sale of a new home.[103] Regardless of how the warranty is created, however, a breach of that warranty is actionable through the DTPA.[104]

Because the DTPA does not create any warranties, they must be established independent of the Act. This means that all questions regarding the existence of a warranty, including whether a warranty has been disclaimed or limited, are a matter of non-DTPA law. Disclaimers, modifications or limitations of warranties are all valid and enforceable in a claim under the DTPA, if they are valid and enforceable outside of the Act.[105]

To bring a breach of warranty claim through the DTPA the consumer must prove that a warranty exists, that the warranty applies to the consumer, and that the warranty has been breached. The DTPA incorporates all existing warranty law and makes a breach of warranty actionable through the Act. This does not change whether a warranty exists, the scope of the warranty, or whether the warranty has been disclaimed or modified. All of these questions are answered by general principles of law outside of the DTPA. Once a breach is established, a consumer may maintain an action under the Act and recover enhanced remedies under the DTPA.

**4. Chapter 541**

The fourth claim that may be brought under the DTPA is the use or employment of an act or practice in violation of Chapter of the Texas Insurance Code. A discussion of Chapter 541 is beyond the scope of this paper, however, suffice it to say that any violation of Chapter 541 is actionable through the DTPA by a consumer.

**V. DEFENSES**

One of the greatest benefits of the DTPA has always been the limited defenses available to defendants. That continues to be the case, even after the recent amendments. The DTPA provides little in the way of statutory defenses, and those that do exist are very limited. For example, one of the few statutory defenses is reliance on written

---

[101] Melody Home Manufacturing Co. v. Barnes, 741 S.W.2d 349 (Tex. 1987). Note that there is no implied warranty of good and workmanlike performance in professional services. Murphy v. Campbell, 964 S.W.2d 265 (Tex. 1998); Dennis v. Allison, 698 S.W.2d 94 (Tex. 1985).

[102] Davidow v. Inwood North Professional Group, 747 S.W.2d 373 (Tex. 1988).

[103] *See* Humber v. Morton, 426 S.W.2d 554 (Tex. 1968).

[104] *But see* the recent Texas Supreme Court decision in PPG Industries, Inc. v. JMB/Houston Centers Limited Partnership, 146 S.W.3d 79, at 89 (Tex. 2004) wherein the court held that a breach of implied warranty claim may not be brought under the DTPA against a "remote" seller, such as a manufacturer. The court stated, "Thus, we have established a clear distinction between DTPA and warranty claims: A downstream buyer *can* sue a remote seller for breach of an implied warranty, but *cannot* sue under the DTPA."(emphasis in original)

[105] *See* Southwestern Bell Telephone Company v. FDP Corp., 811 S.W.2d 572 (Tex. 1991). It must be emphasized that the validity of a warranty disclaimer or limitation is determined exclusively from "non-DTPA" law. In other words, only a warranty that exists and has not been disclaimed may give rise to a claim under section 17.50(a)(2) of the Act. *See, e.g.*, Lindsey v. Lone Star R.V. Sales, 2009 U.S. Dist. LEXIS 38616 (S.D. Tex. 2009) (no action may be brought under DTPA when contract disclaims all warranties).

information provided to the defendant by another. To use this defense the defendant must also show he gave the consumer reasonable and timely written notice of the defendant's reliance.[106]

It also is significant to note that common law defenses, applicable to a breach of contract or tort claim, essentially are inapplicable to a claim under the DTPA. The DTPA does not represent a codification of the common law and, therefore, common law defenses do not apply. For example, the doctrine of "substantial performance" has been held not to apply to the DTPA,[107] as has the "parol evidence rule."[108] Waiver and estoppel are also inapplicable to a claim under the Act.[109] Recent decisions, however, have provided for defenses based on contract language negating causation.

As discussed below, a consumer must prove that the wrongful act of the defendant was a producing cause of the consumer's damages. It is a defense to damages under the DTPA to show that the act or practice was not a producing cause of the consumer's damages. For example, it is not unusual for a consumer to purchase goods or services "as is," with a contract stating he or she is not relying on any representation of the seller. If a consumer knowingly and voluntarily signs a contract containing such provisions, the consumer has negated "producing cause" and is not entitled to any damages.[110] In *Prudential Insurance Company of America v. Jefferson Associates, Ltd.,*[111] Goldman, a sophisticated businessperson, agreed to purchase property from Prudential Insurance. Goldman signed a contract that stated the purchase was as is, "with any and all latent and patent defects."[112] Goldman also stated that he was not relying upon any representation of the seller. Goldman sued the seller under the DTPA after discovering that the seller misrepresented the condition of the building. The court held that the agreement signed by Goldman negated any producing cause and precluded any recovery under the DTPA.[113]

The court in *Prudential,* however, made it clear that its holding did not apply to all such contractual provisions. Producing cause will be negated only when the agreement is bargained for at arms length and freely, knowingly, and intelligently negotiated.[114] For

---

[106] TEX BUS & COM CODE §17.506.

[107] Smith v. Baldwin, 611 S.W.2d 611 (Tex. 1980).

[108] Weitzel v. Barnes, 691 S.W.2d 598 (Tex. 1985).

[109] Kennemore v. Bennett, 755 S.W.2d 89 (Tex. 1988).

[110] Note that such a contract will also negate reliance required by TEX. BUS. & COM. CODE § 17.50(a) for a laundry list claim.

[111] 896 S.W.2d 156 (Tex. 1995).

[112] It is important to emphasize that although the court referred to the clause in *Prudential* as an "as is" clause, it is actually much more. A simple "as is" clause merely negates warranties. The clause is *Prudential* also contained language negating reliance on "any representation." This distinction is important, and has often been over looked by the courts. For example, in Thermacor Process, L.P. v. BASF Corp., 567 F.3d 736 (5th Cir. 2009), the court cited *Prudential* for the proposition that a "disclaimer of warranty can bar…fraud and DTPA claims." In fact, that is not the holding of *Prudential* and the warranty disclaimer in *Thermacor,* while effective to disclaim warranties should not have been sufficient to disclaim DTPA misrepresentation claims. *See also* Oliver v. Ortiz, 2008 Tex. App. LEXIS 6033 (Tex. App. Austin Aug. 5, 2008, no pet. h.) (language of as is "clause did not cover representations upon which DTPA claim was based); Kupchynsky v. Nardiello, 230 S.W.3d 685 (Tex. App. Dallas 2007, pet. denied) ("as is" clause not discussed nor negotiated not effective to disclaim DTPA).

[113] *Id.* at 161

[114] *Id.* at 162

23

example, in a one-sided transaction, between an unsophisticated consumer and a knowledgeable businessperson, such a clause may not have the same effect.[115]

## 1. Mediation

Although it is not a "defense," either party to a DTPA case has the right to attempt to settle the matter by compelling mediation. Under the 1995 amendments to the DTPA, either side may file a motion to compel mediation.[116] The motion must be filed within 90 days after service of a pleading seeking relief under the Act. Both sides must share the costs of the mediation, unless the amount of economic damages sought is less than $15,000. In that case, the party requesting mediation must pay the costs. Mediation generally must be held within 30 days of the request.[117]

## 2. Arbitration

Contract provisions requiring arbitration of DTPA claims are enforceable in the same manner as with respect to any other claim and do not constitute a waiver of the Act.[118]

## 3. Pre-Suit Notice

Perhaps the most misunderstood, and least used of the DTPA provisions are its notice and settlement provisions. When properly used, these provisions encourage reasonable settlement and preclude frivolous litigation. The 1995 amendments to the DTPA strengthen these provisions providing even greater incentives for both sides to carefully consider the contents of their notice and settlement letters.

Section 17.505(a) provides that as a prerequisite to filing suit, a consumer must give the defendant written notice at least 60 days before filing the suit.[119] The notice must advise the person in reasonable detail of the consumer's specific complaint and the amount of economic damages, damages for mental anguish, and expenses including attorneys' fees, if any, reasonably incurred by the consumer in asserting the claim.[120]

If the consumer fails to give notice as required, the defendant may file a plea in abatement not later than the 30th day after the date the person files an original answer. The suit will then be abated to permit the consumer to give proper notice.[121]

## 4. Settlement

Once a plaintiff has given proper notice, the defendant has four options.[122] First, the defendant may pay the amount requested and settle the matter.[123] Second, he may

---

[115]

[116] TEX. BUS. & COM. CODE § 17.5051.

[117] *Id.*

[118] *See, e.g.,* Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266 (Tex. 1992). For a general discussion of arbitration in the consumer context, see Richard M. Alderman, Pre-Dispute Mandatory Arbitration in Consumer Contracts: A Call for Reform, 38 Hous. L. Rev. 1237 (2001).

[119] If the giving of 60 days written notice is impracticable by reason of the necessity of filing suit in order to prevent the expiration of the statute of limitations or if the consumer's claim is asserted by way of counterclaim, notice is not required. DTPA §17.505(b).

[120] *Id.*

[121] TEX. BUS & COM. CODE § 17.505(c).

[122] Note that the fourth option was not available before the 1995 amendments.

ignore the notice and do nothing. Third, he may propose a settlement[124] and forward it to the plaintiff within 60 days after receipt of the notice.[125] And, finally, he may wait until suit is filed and then file a settlement proposal during the period beginning on the date an original answer is filed and ending on the 90th day after that date. If mediation is held, a person may tender settlement during the period beginning on the date that the mediation ends and ending on the 20th day after that date.[126]

Under section 17.5052(d), a settlement offer must include an offer to pay the following amounts of money, separately stated:

(i) an amount of money or other consideration reduced to its cash value (settlement in kind), as settlement of the consumer's damages; and

(ii) an amount of money to compensate the consumer for the consumer's reasonable attorneys' fees incurred as of the date of the offer.

An example best demonstrates how the notice and settlement provisions of the DTPA work.

Assume consumer sends written notice to defendant advising him of a claim under the DTPA. Consumer states that defendant misled him with respect to the extent of repairs necessary to repair his car. Consumer requests $2,000 for overcharges, and $1,300 to restore the car to its original condition. He also demands $300 for a rental car. Finally, consumer requests $500 for attorneys' fees. Defendant tenders a settlement offer including $1,000 for overcharges, a promise to restore the car to its original condition, valued at $1,000, and the use of a loaner car, valued at $300. He also offers to pay $500 for attorneys' fees.

If the consumer rejects the defendant's tender of settlement, it may be filed with the court together with an affidavit certifying its rejection.[127] Rejection of a reasonable settlement offer limits a consumer's recovery of damages. If the court finds that the Defendant's settlement offer is the same, substantially the same as, or more than, the damages found by the trier of fact, the consumer may not recover as damages an amount in excess of the lesser of:

(i) the amount of damages tendered in the settlement offer; or

(ii) the amount of damages found by the trier of fact.[128]

Assume in the above example that the consumer rejects the defendant's offer and the matter proceeds to trial. The jury awards the consumer damages in the amount of $1,100 for overcharges, $900 to restore the car, $300 for a rental car and $15,000 for attorneys' fees. Because the Defendant's settlement offer was "substantially the same" as the amount of damages the consumer would be limited to $1,000 for overcharges (the lesser amount), $900 to restore the car (the lesser amount) and $300 for a loaner car. In

---

[123] Note that even if the plaintiff refuses an offer of settlement in full, the tender itself will constitute a defense if the plaintiff pursues the matter.

[124] A settlement offer is not an admission of engaging in an unlawful act or practice or liability under the Act. It may not be offered as evidence except in connection with the limitation of damages or attorneys' fees. TEX. BUS. & COM. CODE § 17.5052(k).

[125] *Id.* at § 17.5052 (a).

[126] *Id.* at § 17.5052 (c).

[127] *Id.* at § 17.5052(f).

[128] *Id.* at § 17.5052(g).

other words, the defendant's reasonable offer has the potential to substantially limit damages, and preclude additional damages.

## 5. Attorneys' Fees

Perhaps even more significantly than limiting damages, the rejection of a reasonable settlement offer substantially limits the recovery of the consumer's attorney's fees. In many DTPA cases, a substantial part of the plaintiff's recovery consists of the consumer's attorneys' fees. Section 17.5052 as amended in 1995 provides an opportunity for the defendant to limit its exposure through a reasonable offer of attorneys fees, at the time the offer was made.[129] If the court finds that the defendant's tender of settlement was the same, substantially the same, or greater than the damages found by the trier of fact, the court then determines the attorneys' fees necessary to compensate the consumer for attorneys' fees incurred before the date and time of rejection of the offer.[130] If the court finds that the offer of attorneys' fees in the defendant's offer was the same, substantially the same, or more, than the amount of reasonable attorneys' fees, the consumer may not recover fees greater than the amount of fees tendered in the settlement offer.[131]

Referring again to the above hypothetical, assume that the court determines that the amount of reasonable attorney's fees at the time the settlement was rejected was $500.

The consumer will be limited to the recovery of $500, the amount offered in the settlement offer, notwithstanding the fact that the jury awarded fees in the amount of $15,000.

The DTPA is designed to provide a liability scheme that can be understood by the parties, and notice and settlement practices that encourage settlement rather than litigation. Plaintiffs' attorneys must be careful to send reasonable notice letters designed to encourage settlement in full and prompt resolution, while defendants' attorney should always offer some amount in settlement to be able to take advantage of the DTPA penalty provisions in the event a reasonable settlement offer is rejected.

## 6. Limitations

An action under the DTPA must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice.[132]

Section 17.565 provides what is generally referred to as a "discovery rule" of limitations. It provides an objective and a subjective test for determining when limitations begin to run. Limitations run two years from either:

(i) The date of the act or practice;

(ii)The date the consumer discovered the act or practice; or

(iii) The date the consumer in the exercise of reasonable diligence should have discovered the act or practice.

---

[129] *Id.* at § 17.5052 (d)(2).

[130] *Id.* at § 17.5052(h).

[131] *Id.*

[132] TEX. BUS. & COM. CODE §17.565. The limitation period may be extended 180 days if the consumer proves that failure to timely file was due to the defendant's knowingly engaging in conduct solely calculated to induce the plaintiff to refrain from or postpone the commencement of the action.

Note that the third alternative applies a reasonable person test to the consumer's discovery. Actual discovery is not required if "in the exercise of reasonable diligence" the act or practice should have been discovered. In most cases, the courts have held that a consumer "should have" discovered the act or practice, no later than the date the injury occurs.[133]

### 7. Preemption

In some cases the provisions of the DTPA may be preempted by other state law provisions. For example, state law specifically exempts certain acts of health care providers,[134] and veterinarians[135] from the provisions of the DTPA. The Texas Supreme Court has also held that the DTPA is indirectly pre-empted by the provisions of the Texas Antitrust Act.[136] It is important that attorneys for both parties carefully review Texas law outside of the DTPA to see if the provisions of the DTPA have been preempted.

The courts have also found that various federal laws preempt the DTPA when their provisions conflict. For example, it has been held that the DTPA may be preempted by ERISA,[137] the Airline Deregulation Act,[138] and the Carmack Amendment.[139] In many other cases, however, preemption claims have been unsuccessful. The issue depends upon whether the statute in question expressly provides for preemption or whether it is implied by the regulation itself and whether that preemption is applicable to the facts of the particular case. Again, it is essential that the attorney in a DTPA case be familiar with relevant federal law and understand its possible preemptive effect.

## VI. REMEDIES

The DTPA has always provided for liberal damages to an aggrieved consumer. This was done to insure that consumers were fully compensated, provide an incentive for attorneys to handle such cases, and provide a deterrent to wrongful conduct. As originally enacted, the DTPA provided for mandatory trebling of all actual damages, as well as attorneys' fees to a prevailing consumer. In 1979, the legislature recognized the potential for over-compensation from a mandatory trebling provision and amended section 17.50 to require trebling of only the first $1,000 of damages. Damages in excess of $1,000 were subject to trebling at the discretion of the jury, if the defendant was found to have enacted "knowingly."

Today, section 17.50 still provides significant relief for consumers who prevail under the Act. The 1995 amendments, however, have substantially reduced potential damages. The amendments, however, did not change the mandatory award of attorneys' fees to a prevailing plaintiff, nor did they eliminate the potential for additional damages

---

[133] *See, e.g.,*KPMG Peat Marwick v. Harrison Co. Hous. Fin. Corp., 988 S.W.2d 746 (Tex. 1999).

[134] TEX. CIV. PRAC. & REM. CODE §74.004.

[135] TEX OCC. CODE § 801.507, Nonapplicability of Deceptive Trade Practices-Consumer Protection Act, provides, "Subchapter E, Chapter 17, Business & Commerce Code, does not apply to a claim against a veterinarian for damages alleged to have resulted from veterinary malpractice or negligence."

[136] Segura v. Abbott Laboratories, Inc., 907 S.W.2d 503 (Tex. 1995).

[137] *See, e.g.,* Cathey v. Metropolitan Life Ins. Co., 805 S.W.2d 387 (Tex. 1991).

[138] *See, e.g.,* Trans World Airlines, Inc. v. Mattox, 897 F.2d 773 (5th Cir. 1990) aff'd, 498 U.S. 926 (1992).

[139] *See, e.g.,* Moffitt v. Bekins Moving & Storage, 818 F. Supp. 178 (N.D. Tex. 1993).

based on "knowing" conduct by a defendant.[140] It is fair to say that although DTPA damages have been reduced, they still provide a generous potential for recovery when compared to alternative causes of action. The Act also permits the award of attorneys' fees to defendants in cases where a consumer files a frivolous claim.

### 1. Causation

One of the most significant elements of recovery under the DTPA is the lower causation under section 17.50(a). To recover damages a DTPA consumer must show that the defendant's conduct was "a producing cause of economic damages or damages for mental anguish." Thus, the causation standard for recovery of damages under the Act is "producing cause." This is the lowest causation standard employed by the courts and has been defined to mean: "an efficient, exciting, or contributing cause, which in a natural sequence, produced injuries or damages complained of."[141] "A producing cause is a *substantial factor* which brings about the injury and without which the injury would not have occurred."[142] Note that this is a lower standard than "proximate cause," which incorporates an element of forseeability and that there may be more than one producing cause.[143]

### 2. Damages in General

The current language of the DTPA provides that each consumer who prevails may obtain economic damages and, in an appropriate case, damages for mental anguish and additional damages of not more than three times the damages awarded.[144] Each consumer who prevails under the Act is entitled to recover "economic damages." This is a new term that was added to the DTPA in 1995 to replace the former damage standard of "actual damages." Economic damages is defined to mean

> compensatory damages for pecuniary loss, including costs of repair and replacement. The term does not include exemplary damages or damages for physical pain and mental anguish, loss of consortium, disfigurement, physical impairment, or loss of companionship and society.[145]

Economic damages may be computed by any appropriate formula including the benefit of the bargain rule,[146] the out-of-pocket rule, or the cost of repairs. Consequential damages are also recoverable whenever appropriate under general principles of contract law.

---

[140] Note that this is a substantially lower standard than that required in a tort case. *See generally*, Chapter 41 of the Texas Civil Practice and Remedies Code, which requires a finding of fraud, malice or gross negligence to support an award of exemplary damages.

[141] See Rourke v. Garza, 530 S.W.2d 794, 801 (Tex. 1975). *See generally* Page Keeton, *Causation*, 28 S. TEX. L. REV. 231 (1986).

[142] Doe v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d 472, 481 (Tex. 1995).

[143] For example, in Archibald v. Act III Arabians, 755 S.W.2d 84 (Tex. 1988), the jury found conduct sufficient to satisfy the producing cause standard but not proximate cause.

[144] TEX. BUS. & COM. CODE § 17.50(b)(1). Note that the general damage standard was changed in 1995 from "actual damages," to "economic damages." Actual damages, however, remains the damage standard under section 17.50(h) for violation of "tie-in" statutes.

[145] *Id.* at § 17.45(11).

[146] In Perez v. Luu, 244 S.W.3d 444 (Tex. App. Eastland 2007, no pet.h.), the court apparently did not understand the purpose of the benefit of the bargain rule, and its objectives. As noted in the text, the

Although there have been few cases discussing the term economic damages, it should be interpreted to include all compensatory damages and exclude all "soft " damages. For example,

> Consumer purchased a toaster from seller. The toaster had a warranty defect. As a result it caught on fire. Consumer was burned, the toaster was destroyed and the kitchen was damaged. Consumer sued for breach of warranty under the DTPA and negligence. She sought damages for her medical expenses, the cost of the toaster, the cost to repair the kitchen, pain and suffering, and disfigurement. Under the DTPA, she may recover only "economic damages," including her medical expenses, the cost of the toaster and the cost to repair the kitchen.

Note that the term "economic damages" expressly excludes recovery for mental anguish. Damages for mental anguish, however, are expressly authorized by section 17.50(b)(1), upon a finding that the defendant acted "knowingly.

Prior to 1995, damages for mental anguish were recoverable as part of "actual damages."[147] In 1995, the legislature replaced the term actual damages with the term "economic damages." As noted above, the term "economic damages" expressly excludes recovery for mental anguish. The DTPA states, however, that: "If the trier of fact finds that the conduct of the defendant was committed knowingly, the consumer may also recover damages for mental anguish."[148]

> "Knowingly" is defined by the Act to mean:
> actual awareness, at the time of the act or practice complained of, of the falsity, deception, or unfairness of the act or practices giving rise to the consumer's claim, or, in an action brought under Subdivision (2) of Subsection (a) of Section 17.50, actual awareness of the act, practice, condition, defect, or failure constituting the breach of warranty, but actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.[149]

Under this definition, actual awareness does not mean merely that the person knew what he or she was doing. It means that the person knows that what he or she is doing is false, deceptive, misleading, unfair, or a breach of warranty. For purposes of determining whether a person acted knowingly, knowledge or industry standards may be imputed to one who is in an industry. Note that "knowingly" is a question of fact to be determined by the trier of fact, and may be inferred from objective manifestations. Once it is determined that the defendant has acted "knowingly" the jury is permitted to consider an award of damages for mental anguish.

The award of damages for mental anguish damages must be made based on the same standard that would be required to award such damages in any other cause of action. There is no requirement that the consumer be awarded economic damages or that there be an accompanying physical injury.[150] The consumer must, however, show a

---

purpose of this rule is to reward the consumer for a "good bargain." In *Perez*, the consumer attempted to purchase 100 hard drives, worth $1,195 each, for $1, the price the seller mistakenly advertised them for. The court noted, "even if Perez were otherwise correct [regarding liability] his maximum damages under this theory [benefit of the bargain] would be only $100." The court was correct in finding no liability under the DTPA; however, its damage calculation is in error.

[147] Note this is still the applicable standard for a tie-in statute. See TEX. BUS. COM. CODE 17.50(h).

[148] TEX. BUS. & COM. CODE § 17.50(b)(1).

[149] *Id.* at § 17.45(9).

[150] *See, e.g.*, Latham v. Castillo, 972 S.W.2d 66 (Tex. 1998) (Pre-1995 version of Act).

relatively high degree of mental pain and distress, more than mere disappointment, anger, resentment, or embarrassment. Compensation can only be for mental anguish that causes a "substantial disruption in… daily routine" or "a high degree of mental pain and distress" that is "more than mere worry, anxiety, vexation, embarrassment or anger."[151] For example, recovery may be based upon mental sensation of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair and/or public humiliation.

A DTPA consumer who prevails may recover all of the consumer's pecuniary loss as "economic damages." This includes any economic damages arising out of an incident involving a personal injury, such as hospital bills or lost income, and includes direct and consequential damages. If the defendant acted "knowingly," the consumer may also recover damages for "mental anguish." Economic damages, however, do not include traditional "soft" tort damages such as pain and suffering, loss of consortium, or disfigurement.

### 3. Additional Damages

To achieve its objectives of deterring wrongful conduct, protecting consumers and providing an incentive for attorneys to bring a lawsuit, the DTPA permits the recover of damages in addition to actual losses. As originally enacted, the DTPA automatically trebled all damages recovered by the consumer. Today, additional damages, up to a total of three times the amount awarded by the jury, may be awarded

The DTPA authorizes the award of additional, or punitive damages, whenever the defendant has acted "knowingly," or "intentionally." Section 17.50(b) states in relevant part:

> If the trier of fact finds that the conduct of the defendant was committed knowingly,…the trier of fact may award not more than three times the amount of economic damages; or if the trier of fact finds that the conduct was committed intentionally, …the trier of fact may award not more than three times the amount of damages for mental anguish and economic damages.[152]

In other words, whenever the fact finder finds the defendant acted knowingly, it may award a total of up to three times the consumer economic damages. A finding of intentional conduct entitles the consumer to a total of up to three times economic damages and damages for mental anguish.

It is important to note that this section authorizes the trier of fact to award a total of not more than three times economic damages, or, a total of three times economic damages and damages for mental anguish. This means that the maximum recovery is three times economic damages, or economic damages and damages for mental anguish. For example, assume that the fact finder awards $5,000 in economic damages. If it then finds the conduct was committed knowingly, it may award a total recovery between $5,000 and $15,000. This section does not authorize the recovery of economic damages plus three times economic damages.[153] To fully understand the DTPA additional damages it is best to view it as authorizing the award of damages, plus up to an additional two-times

---

[151] *See, e.g.*, Parkway Co. v. Woodruff, 901 S.W.2d 434 (Tex. 1995).

[152] TEX. BUS. & COM. CODE § 17.50(b)(1).

[153] *See, e.g.*, Jim Walter Homes, Inc. v. Valencia, 690 S.W.2d 239 (Tex 1985) (decided under pre-1995 DTPA).

damages, for a total of not more than three times damages. [Note that in Tony Gullo Motors v. Chapa, 212 S.W.3d 299 (Tex. 2006) the supreme court seems to state that additional damages my be three times economic damages for a total recovery of four times economic damages. To date, no other court has followed this interpretation.]

### 4. Attorneys' Fees

In order to fully compensate the consumer, as well as encourage attorneys to represent consumers, the DTPA mandates the award of attorneys' fees to a prevailing consumer. Additionally, to deter frivolous lawsuits, the Act mandates the award of attorneys' fee to a defendant when the suit was "groundless and brought in bad faith, or brought for the purpose of harassment."

### a. Consumers' Attorneys' Fees

"Each consumer who prevails shall be awarded court costs and reasonable and necessary attorneys' fees."[154] By using the word shall this section make it clear that the award of attorney fees to a prevailing plaintiff is not optional. Attorneys' fees must be awarded to a successful consumer. Attorneys' fees are awarded even if the consumer's entire recovery of damages is offset by a claim of the defendant.[155]

A consumer is entitled to recover attorneys' fees in an amount that is "reasonable and necessary." Although many attorneys will have a percentage contingency fee arrangement with his or her attorney, the Texas Supreme Court has held that although such an agreement is valid between the parties, the amount of the fees awarded by the fact finder must be determined in a dollar amount not as a percentage of the recovery.[156]

### b. Defendants' Attorneys' Fees

Section 17.50(c) provides that "on a finding by the court that an action under this section was groundless in law or in fact or brought in bad faith, or brought for purpose of harassment, the court shall award to the defendant reasonable and necessary attorneys' fees and court costs."[157] Note that similar to the award of consumers' attorneys' fees, the award of defendants' attorneys' fees is mandatory once a court makes the requisite factual findings.

The determination of whether adequate facts exist to justify the award of defendants'' attorneys' fees is a question of law for the court, not the fact finder.[158] If the court finds the consumer's claim was groundless or brought in bad faith it shall award attorneys' fees to the defendant.[159] Groundless should be defined as having "no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law."[160] Although the courts have not yet defined "bad faith" in the context of DTPA attorneys' fees, however, a finding of malice, ill will, spite, or reckless disregard should be sufficient. Note that the court must find the action to have been either brought in bad faith or groundless to justify the award of attorneys' fees.

---

[154] TEX. BUS. & COM. CODE § 17.50(d).

[155] *See* McKinley v. Drozd, 685 S.W.2d 7 (Tex. 1985).

[156] *See* Arthur Andersen & Co. v. Perry Equipment Corp., 945 S.W.2d 812 (Tex. 1997).

[157] TEX. BUS. & COM. CODE § 17.50(c).

[158] Donwerth v. Preston II Chrysler-Dodge, Inc., 775 S.W.2d 634 (Tex. 1989).

[159] Note that the term "or" was added in 1995 replacing the term "and." This would appear to create a lower standard for the award of defendants' attorneys' fees.

[160] See Donwerth v. Preston II Chrysler-Dodge, Inc., 775 S.W.2d 634 (Tex. 1989).

Under the present version of the DTPA, harassment alone is also sufficient to support the award of defendants' attorneys' fees. The suit, however, must be brought for the sole purpose of harassment.[161] Essentially, to establish harassment it is necessary to show the consumer would not be better off after the suit than he or she was before the suit.

A defendant is entitled to recover attorneys' fees in an amount that is "reasonable and necessary." The Texas Supreme Court has held that in the context of a consumer's attorneys' fees this requires that the amount of the fees be determined in a dollar amount not as a percentage of the recovery.[162] A similar standard should be applied with respect to defendants' attorneys' fees.

## 6. Tie-in Statutes: Actual damages

Prior to 1995, the DTPA permitted a consumer who prevailed to recover all "actual damages." Actual damages is generally defined to include all damages recoverable at common law, and includes damages for mental anguish, and the so-called "soft damages," such as pain and suffering and loss of consortium. As discussed above, this term has been replaced as the DTPA's general damage standard with the less inclusive term "economic damages." Actual damages, however, may still be recovered in cases brought through the so-called "tie-in statutes."

Since the enactment of the DTPA, the legislature has chosen to incorporate its provisions into many other statutes dealing with consumer-related issues. This is accomplished by making a violation of those statutes a violation of the DTPA, actionable under the provisions of the DTPA. Because these statutes tie them to the DTPA, they are generally referred to as "tie-in statutes."

Section 17.50(h) of the DTPA provides that if the consumer brings a claim through another law, *i.e.* a tie-in statute, the consumer may recover any "actual damages" incurred. For purposes of DTPA "additional damages" in an action brought through a tie-in statute, the term "economic damages" is replaced with the term actual damages. A brief example demonstrates the significance of this provision.

> Consumer went to a health club to discuss a possible membership. The salesperson misrepresented the qualification of the instructors and the terms of the membership agreement. As a result, Consumer was injured. If consumer files a complaint under the laundry list she will recover economic damages. To recover mental anguish damages she must show the defendant acted knowingly. To recover treble economic damages she must show the defendant acted knowingly. To recover treble mental anguish damages she must show defendant acted intentionally.

If, however, Consumer filed her DTPA claim through the Health Spa Act, a tie-in statute, she would be authorized to recover all actual damages. (Which includes mental anguish as well as pain and suffering.) To recover treble all actual damages, including mental anguish damages, she must show the defendant acted knowingly.

The term actual damages has been defined to include any damages recoverable at common law. The amount of damages recoverable is determined by the total loss of the

---

[161] *Id.*

[162] *See* Arthur Andersen & Co. v. Perry Equipment Corp., 945 S.W.2d 812 (Tex. 1997).

consumer.[163]The term includes all compensatory damages, as well as damages for mental anguish and pain and suffering.

Perhaps the most significant change made by the 1995 amendments was the replacement of the term "actual damages, "with "economic damages." Section 17.50(h), however, reinstates the former "actual damages" standard in any case brought through a tie-in statute. A consumer who brings a claim through a tie-in statute is entitled to recover damages under the more generous damage standard of "actual damages,"  and treble that amount upon a showing that the defendant acted "knowingly." It is in the interest of all consumer attorneys to carefully review the more than thirty tie-in statutes to see if a possible claim may be brought, in addition to the more standard laundry list, unconscionability and warranty claims.

| _Tie-in Statute_ | _Citation_ |
|---|---|
| Business Opportunity Act | Tex. Bus. & Com. Code § 41.302 |
| Certain Sales Of Homestead | Tex. Prop. Code § 41.006(b) |
| Coastal Public Lands Management Act of 1973 | Tex. Nat. Res. Code § 33.135(d) |
| Contest and Gift Tex. Giveaway Act | Tex. Bus. & Comm. Code §621.252 |
| Debt Collection Act | Tex. Fin. Code § 392.404(a) |
| Disclosure by Financial Institution that Deposits are Not Insured | Tex. Ins. Code § 556.052 |
| Disclosure to Purchaser of Property | Tex. Nat. Res. Code § 61.025(d) |
| Health Spa Act | Tex. Occ. Code § 702.403 |
| Home Solicitation Sales | Tex. Bus. & Comm. Code§ 601.204 |
| Licensing and Regulation of Speech-Language Pathologists and Audiologist | Tex. Occ. Code § 401.501 |
| Personal Employment Services | Tex. Occ. Code § 2501.204 |
| Credit Service Organizations | Tex. Fin. Code § 393.504 |
| Regulation of Invention Development Services Act | Tex. Bus. & Comm. Code § 52.153 |
| Removal of Unauthorized Vehicles from Parking Facility or Public Roadway | Tex Occupations Code § 2308.406 |
| Rental-Purchase Agreements | Tex. Bus. & Com. Code § 92.202 |
| Representation as Attorney | Tex. Gov. Code § 406.017(f) |
| Residential Service Company Act | Tex. Occ. Code § 1303.405 |
| Sales of Certain Fuel | Tex. Agriculture Code § 17.152 |
| Self-Service Storage Facility Liens | Tex. Prop. Code § 59.005 |
| Talent Agency Registration Act | Tex. Occ. Code § 2105.251 |
| Telephone Solicitation | Tex. Bus. & Comm. Code§ 302.303 |
| Texas Manufactured Housing Standards Act | Tex. Occ. Code § 1201.603 |
| Texas Membership Camping Resort Act | Tex. Prop. Code § 222.011(a) |
| Texas Motor Vehicle Commission Code | Tex. Occ. Code §§ 2303.054, 2302.053 |
| Texas Optometry Act | Tex. Occ. Code § 351.604 |
| Texas Timeshare Act | Tex. Prop. Code § 221.071(a) |
| Treatment Facilities Marketing Practices Act | Tex. Health & Safety Code § 164.013 |
| Unfair Claim Settlement Practices Act | Tex. Ins. Code § 542.004 |
| Private Child Support Enforcement Agencies | Tex. Finance Code § 396.353(a) |
| Private Action for Damages Authorized | Tex. Ins. Code § 541.151 |
| Cigarette Tax, Enforcement of Tax | Tex. Tax Code § 154.4095 |
| | Tex. Bus. & Comm. Code § 52.153 |
| Occupational and Business Regulation, Miscellaneous | |
| Medical Liability, Arbitration Agreements | Tex. Civ. Prac. & Rem. Code § 74.451(c) |
| Currency Exchange, Transportation, and Transmission | Tex. Finance Code § 153.404 |
| Home Improvement Contract | Tex. Prop. Code § 41.007(b) |
| Seller's Disclosure of Tax Payments and Insurance Coverage | Tex. Prop. Code § 5.070(b)(1) |
| Disposition of Insurance Proceeds | Tex. Prop. Code § 5.078(d), (e) |

---

[163] _See, e.g._, Kish v. Van Note, 692 S.W.2d 463 (Tex. 1985).

| | |
|---|---|
| Interest in Land, Disclaimer and Disclosure Required | Tex. Prop. Code § 41.0051(c) |
| Executory Contract for Conveyance, Oral Agreements Prohibited | Tex. Prop. Code § 5.072(e)(1), (f) |
| Seller's Disclosure of Property Condition | Tex. Prop. Code § 5.069(d)(a), (e) |